WOOD *v.* POUGHKEEPSIE MUTUAL INSURANCE CO.

32  619
139  524

32  619
155  269

The condition in a policy of insurance, that the instrument shall not be binding until actual payment of the premium, may be waived by a general agent of the company, by delivering the policy without exacting prepayment.

But there is no such waiver when the agent merely leaves the policy for examination, and requires the party, if he concludes to accept it, to prepay the premium in accordance with the condition.

Evidence that the agent of the company frequently waived the condition of prepayment, is not admissible to raise an inference of waiver in the absence of other proof tending to establish it.

THE action was on a policy of insurance, bearing date on the 2d of August, 1855, and covering property of the plaintiff in Williamsburgh, which was destroyed sixteen days afterward by fire.

The defense was, that the policy never became an operative instrument; that it was not accepted by the plaintiff; that it provided, in terms, that the instrument should not be binding upon the company until the payment of the premium, and that the premium was never paid.

The cause was tried at the Kings County Circuit in June, 1859, before Mr. Justice LOTT, and the plaintiff was nonsuited. On his application, the judge directed that the entry of judgment be suspended, and the exceptions be heard in the first instance at the General Term.

On the trial it appeared that no application was made by the plaintiff for the policy. His property had been previously insured by one Boggs, as agent for other companies, and those insurances had expired. Boggs, having ceased to be agent for these companies, of his own motion, filled up two policies in the name of the plaintiff, in behalf of this and another company, for which he continued to act as agent, and left them with the clerk of the plaintiff, during his absence from town, on condition that when he came home he should pay the premium if he accepted, and return the policies if he declined them.

The plaintiff claimed that by not returning the policies he accepted them. The defendant claimed that by refusing to

pay the premium he declined them. It was proved that the agent sent a messenger three times to the plaintiff, with instructions to ask for the premium or the policies. The first time the plaintiff was out. The next time the messenger asked him for the premium, and he told him to call again. The last time he at first directed his clerk to draw a check for the premium, but afterwards countermanded his direction and said he would call on Boggs and see him about another loss, as to which he expressed some dissatisfaction. The next day the fire occured. He at no time communicated, either to Boggs or the company, his acceptance of the policy, and he made no offer to pay the premium until after the fire.

The defendant proved that Boggs was under instructions not to waive the prepayment of premiums; but it was not claimed that the plaintiff was aware of these instructions.

Evidence was offered by the plaintiff that Boggs was accustomed to waive the condition of prepayment, but the proof proposed was excluded.

The General Term sustained the nonsuit, and the plaintiff appealed to this Court.

*Theodore F. Jackson*, for the appellant.

*John H. Reynolds*, for the respondent.

PORTER, J. Boggs was a general agent of the company. If he had waived the condition of prepayment, the insurers would have been bound by his act, though it was in violation of their private instructions. The law would have implied such waiver if the policy had been delivered by the agent without requiring payment of the premium, and had been accepted by the plaintiff as a complete and executed contract. The company would have been held to its engagement, and the assured would have been liable for the premium, notwithstanding the acknowledgment of payment on the face of the paper.

But there was no such waiver, either by the agent or the company; and the policy never became operative as a binding and mutual contract. It is true that it was complete in form, and that it was found in the plaintiff's possession; but

the presumption in his favor, which would naturally arise from these facts, was repelled by undisputed proof that it was not accepted by him as a concluded agreement, nor delivered as such by Boggs. The appellant made no application for insurance, either to the agent or the company. Boggs had before contracted with him in behalf of other underwriters. His agency for them having terminated, and the old policies having expired, he desired to have the plaintiff insure his property with the defendant. He accordingly filled out the policy in question with another of a similar character, and, in the absence of Mr. Wood, left them with a clerk in his store, on the condition that when the plaintiff came to town, the premium should be paid if he accepted them, or the policies returned if he declined them. When Wood came, he did neither. The agent sent his clerk three times with instructions to call for the premium or the policies. The first time Wood was not in. The next time he deferred an answer, telling the messenger to call again. On the last occasion, which was the day before the fire, he at first directed his clerk to draw a check for the amount of the premium, but subsequently countermanded the order, and said he would call and see Boggs in reference to a loss he had sustained on other property, as to which he made some complaint. He was sworn on the trial as a witness in his own behalf. He proved no acceptance of the policy by himself, and no waiver of the condition by the agent; but he testified, in substance, that he intended to see the agent the day previous to the fire, and should have done so if he had not forgotten it.

It is probable from all the circumstances that his purpose was, in the end, to accept the policy and pay the premium, if the other matter was arranged by Boggs to his satisfaction; but it was at his own peril that he held the question open for advisement. The papers left at his store operated as mere proposals to insure. So long as they were unaccepted, they had no subsisting force. The company, as yet, had no right of action for the premium, and he had no claim to indemnity in case of loss. The acknowledgment of payment in the policy, like the instrument itself, was provisional, and designed

to take effect when he signified his acceptance by sending the premium. Such an acknowledgment does not operate as an estoppel, but merely as evidence of payment; and in this case it is abundantly proved that no such payment was made.

The company waived nothing, even if the instrument be regarded as operative; for it contained a stipulation that until the payment of the premium, the insurers should not be bound by their undertaking. There was no waiver by the agent of this proviso. On leaving the policy with the plaintiff's clerk, he made it an express condition that the premium should be paid or the policy returned; and all that he afterwards did, was to insist on the performance of this condition.

It is claimed that the right of the plaintiff to recover is sustained by the judgment of this court, in the case of *Sheldon* v. *The Atlantic Insurance Co.* (26 N. Y., 460). We do not so understand the effect of that decision, and it evidently was not so understood by Judge Emott, who in that case delivered the opinion, and, in this, concurred in pronouncing the judgment. The policy there, was applied for by one Godfrey, at the office of Lewis, the general agent of the company at Rome. He left the application with Snow, an agent in the same office who acted in the place of Lewis in his absence. Godfrey offered prepayment of the premium, but Snow declined to receive it, stating that they would send for it, or he might bring it in at some future time. Four days afterward, Lewis, the general agent, inclosed this with another policy in a letter to Godfrey, notifying him that the company had increased their rates of insurance, and concluding as follows: " Should you *decline* the policies, please return them by return mail; if you retain them, please send me the amount, $29.50." There was no intimation in the letter, that the waiver of prepayment by Snow was revoked; and the court construed the requirement of an answer by return mail, as applicable only to the case of his refusing to accept the insurance for which he had formally applied. The subsequent action of Lewis favored this contruction. In a letter written to Godfrey some three months afterwards, and subsequent to the burning of the property, he

threatened to cancel the policy unless the premium was paid; thus recognizing it as then in force, though subject to future rescission. It would neither be safe nor just to extend the doctrine of that case to one like this, where the claim of waiver rests on mere implication from the appropriation of the policy by the plaintiff in disregard of the condition, and this without the consent of the company, or of any one acting in its behalf.

The plaintiff, on the trial, offered to prove in various forms, that Boggs was in the habit of violating the instructions of his principals, and waiving the performance of conditions prescribed in their policies. This evidence was properly excluded. No offer was made to show that the company was aware of the practices imputed to the agent; and even if the custom had extended to them, it would be unavailing to control the express terms of the contract. (*Hinton* v. *Locke*, 5 Hill, 437; *Vail* v. *Rice*, 1 Selden, 155.) An omission or waiver in other cases could not be material in this, where the condition is embodied in the policy, and the evidence of waiver is wanting.

It is claimed that the judge erred in directing the exceptions to be heard in the first instance at the General Term, and permitting the entry of judgment to be suspended in the meantime. It is a sufficient answer, that there was no exception to the direction, and the error, if any, was in favor of the appellant. But there was no mistrial, and no irregularity even in practice. The order was properly granted under the 265th section of the Code.

The judgment should be affirmed with costs.

DAVIS, J. On the first trial of this action the plaintiff recovered a judgment which was rendered by the Supreme Court on appeal, and a new trial ordered. On the new trial the plaintiff was nonsuited; and on his motion for a new trial on exceptions, the General Term gave judgment against him upon the nonsuit. The appellant seeks on this appeal to review the decision of the Supreme Court in reversing the first judgment, and ordering the new trial. This he has no

right to do. Having proceeded to the new trial, he is precluded from reviewing the decision of the General Term by which it was ordered; and this court is limited in its review of the case to errors alleged to have arisen on the second trial, and in the proceedings subsequent thereto.

The exception to the nonsuit on the second trial presents the question whether there was any evidence proper for the consideration of the jury, tending to establish facts upon which the plaintiff was entitled to ask a verdict at their hands. The court held, that there was no such evidence; and in this, I think, under the decisions of this court, the learned justice erred.

Boggs was a general agent of the defendant. It is settled by this court that he had authority as such agent to waive the condition of the policy requiring prepayment of the premium; and his act, in so doing, would be binding on the company, whatever his secret instructions might have been. (*Sheldon* v. *The Atlantic Fire Ins. Co.*, 26 N. Y., 460.) In the case just cited, it appeared that Godfrey, the assured party, resided in Oswego county; that he called at the office of an agent at Rome to take a policy on the property, but not finding the agent in, left an application. A few days afterwards, the agent sent a policy to him by mail, at an advanced rate of insurance from that contemplated by Godfrey at the time of his application, and accompanied it with a letter, stating the fact of the advance and the reason for it, and concluding thus, "should you decline the policies, please return them by return mail; or if you retain them, please send the amount, $29.50." One of the conditions of the policy was this, "no insurance, whether original or continued, shall be considered as binding until the actual payment of the premium." Godfrey retained the policy, but did not send the premium. The property was burned several weeks thereafter. Nothing else occurred between Godfrey and the agent before the fire; and the case turned upon the effect of the letter of the agent, and the subsequent conduct of Godfrey. The plaintiff was nonsuited. This court held, that there was a waiver of prepayment, and that the policy

became effectual upon the insured, retaining and thereby accepting it, or at all events, that the question should have been submitted to the jury. It is difficult to perceive any substantial distinction between that case and the present. Of course, the plaintiff is entitled to have the evidence considered in the most favorable view that could fairly have been pressed upon the attention of the jury, and is not restricted to any sharp construction that defendant might have claimed for it. It appeared that Boggs, as a general insurance agent, had for several years been accustomed to insure the property of plaintiff. On the 2d day of August, 1855, four policies, issued by him on the plaintiff's property, expired. As to several of the companies issuing those policies, the agency of Boggs had terminated. On the 3d of August, he made out, without any consultation with plaintiff, two policies, of which the policy in suit is one, for the same amount as the four, and obviously designed to take their place in companies for which he was still agent, dating them the 2d day of August. These policies he took to the store of plaintiff, who was then out of town. He left them, as he says, with the clerks of plaintiff, saying to them that the policies in the four companies had expired, and he had made policies in the two companies, and would leave them on condition that as soon as Mr. Wood returned, and when he did return, either to return the policies if he did not wish them, or send the premium to him. The premium was to be paid as soon as Mr. Wood returned. One of the clerks who was called for plaintiff, states this transaction thus : " I was there when the policy was left; I think the person who left it asked to have the premium sent down; I don't remember anything else, except that he said they had formerly been in four different companies, and he had placed them in two companies; I don't remember anything said about returning the policy; he was there only a few minutes; I heard the whole conversation;" and another part of his testimony he said, " I don't remember much of the conversation at that time; can't state the exact words that were said by the party who left the policy, or what I said in reply." This witness was indistinct and

uncertain in his recollection, and yet the jury may possibly have considered him entitled to greater weight than the agent who testified to the condition with an emphasis not altogether consistent with his subsequent conduct, or with the previous dealings of the parties.

It appeared that the agent sent his clerk three times after-wards for the premium; at one time the plaintiff was out, at another he was engaged and requested the clerk to call again, and at the last, which was the day previous to the fire, he directed his clerk to make a check for the premium, but as the clerk commenced to do so, countermanded the direction, and said (as he himself testified) that he wished to see Boggs about a loss on another policy, and he would come down him-self and bring the check with him.

On none of these occasions, was the clerk of Boggs sent for the policies, nor did he call for them. It was the premium only that he sought to obtain. The plaintiff meantime retaining the policies, and putting off the payment of the premium as above stated.

Now, is it not very obvious from this evidence that if the company were suing for the premium, the plaintiff could not evade its payment under the pretext that he had not accepted the policy? He had retained it several days with knowledge of the change that had been made from his former policies. When asked for the premium, instead of declining to pay and refusing the policy, he had asked further time to pay, by requesting the clerk to call again for it, and finally when the clerk did call, had promised to come down himself to see Mr. Boggs on other business and bring with him a check for the amount. I think, upon this evidence, no court would hesitate to order a verdict against him, on the question whether he had accepted the policy so as to bind himself to pay the premium.

It is apparent that the anxiety of the agent was chiefly di-rected to have the change which he had made in the insurance, without the consent of the plaintiff, ratified, rather than to have the premium paid in advance, for he seems to have ex-pressed no dissent to the requests of plaintiff to repeat the

calls for the premium, nor to have taken any steps to recall ·the policies or to notify the plaintiff that he regarded them as invalid for want of prepayment of the premium. And he himself testified that he gave no special notice to Mr. Wood that the policy would be canceled if the premium was not paid.

I am unable to see why the evidence in this case to show an acceptance, on the part of the insured, of the policy, and a waiver of advance payment of the premium, was not stronger than in the case of *Sheldon* v. *The Atlantic Fire Ins. Co.*, above cited, for in this case there was an actual acquiescence in the requests of the insured for delay in payment of the premium when called for, which is a feature wholly wanting in that case.

The court rejected all evidence tending to show the previous course of dealing between Boggs, the agent, and plaintiff, not only in respect to policies from other companies, but of defendant also. I confess I am at loss to see why it was not competent for plaintiff to show that Boggs had constantly given him credit on the policies of this company, both as tending to establish his authority to make the waiver and shedding light on the conduct of the agent in this particular transaction. If he gave any credit for the premium, necessarily he waived advance payment; but he did acts in respect to it which it is said should be construed as manifesting an intent to give credit. In what better light can these acts be read, with a view to ascertain the intent of the parties, than in that of their prior dealings, in respect to the same kind of business. Certainly it would have been a strong circumstance against the theory that credit was given, if the agent could testify that he had never given plaintiff credit in previous dealings, but at all times had demanded and received advance payments while acting for defendants. And so I think it would be forcible evidence to show that, in a course of several years' dealings between plaintiff and defendants, the agent had uniformly waived advance payment of premium by giving brief credits, and calling for the premiums on occasions subsequent to the delivery of the policy.

I am of opinion that the case should have been given to the jury, and that there was error in excluding the evidence above alluded to; and for these reasons the judgment should be reversed, and a new trial ordered, with costs to abide the event.

The Chief Judge and Judges DAVIES, WRIGHT and BROWN concurred in the foregoing opinion of Judge PORTER.

DAVIS, J., read an opinion for reversal, in which Judges POTTER and CAMPBELL concurred.

Judgment affirmed with costs.