SMITH v. PROVIDENT SAV. LIFE ASSUR. SOC. OF NEW YORK.

(Circuit Court of Appeals, Sixth Circuit. February 5, 1895.)

No. 213.

1. LIFE INSURANCE—AUTHORITY OF AGENTS—DELIVERY OF POLICY BEFORE PAYMENT OF PREMIUM.

The provision in the contract of agency between a life insurance company and a general agent that "agents crediting * * * premiums not actually received do so at their own risk, and must look to the policy holder for reimbursement. The society does not ask or desire you to take this risk,"—is evidence that the company was aware of the practice of its agents to give credit, and, in connection with evidence of the agent's practice of giving credit on the first premium, shows a greater actual authority than is implied from the provision of the policy that it shall not take effect unless the premium is actually paid, so that a delivery by the agent of a policy without receiving payment would constitute a waiver of any such provision.

2. SAME.

In view of the provision in a contract of agency with a life insurance company that agents crediting premiums not actually received do so at their own risk, a provision expressly withholding from the agent authority to give credit will be interpreted to mean credit for the company.

3. SAME—DELIVERY AND ACCEPTANCE OF POLICY.

On inquiry at the office of R., a general agent of a life insurance company, by S., a special agent, for a policy on his own life, which he had applied for, R. handed it to him, and, while he was examining it, R. calculated the amount due from him, after crediting him the amount of his commission, and told him the amount his check should be for, to which he assented. He then complained that he had not obtained the exact form of policy he wished, and on R. replying that it was the form mentioned in the application of S., that he had, however, tried to get the other form, but that he supposed the company was unwilling to issue it for so large a policy, S. said, "Well, I don't like it all the same."

Without anything further being said, S. went out, taking the policy, while R. was at the telephone. They never met again, S. dying within 10 days, having in the meantime been in the office once, while R. was out. R. did not send or write to S. for the policy or premium. The policy was found after the death of S. in his safe-deposit box, with another policy on his life. *Held*, that it was a question for the jury whether there was a delivery and acceptance of the policy.

4. SAME—PRACTICE OF AGENT—KNOWLEDGE OF COMPANY—EVIDENCE.
Monthly reports of an insurance agent to his company showing that policies applied for and sent to him early in the month were generally paid for the last of the month, but not showing when the policies were delivered, are not admissible as evidence that the company was informed of the agent's practice of delivering policies in advance of payment.

5. SAME—CUSTOM.
An offer to show a general custom by which general agents of life insurance companies exercised an authority to grant short credits on first premiums, without offering to show that the custom prevailed in the issuance of a policy which provided that it should not go into effect till the premium had actually been paid, and expressly stated that the agent could not waive the stipulation, is properly rejected in the case of such a policy.

6. SAME—ACTION ON POLICY—TENDER OF PREMIUM.
In an action on a life policy the premium on which had never been paid, tender thereof to the company is not necessary, where the agent had no authority to deliver the policy on the credit of the company, but only by assuming the risk, and thereafter looking to the policy holder for reimbursement.

7. WITNESS—IMPEACHMENT.
Plaintiff, after calling and using a witness to prove certain things, cannot impeach with respect to facts testified to by him when a witness for defendant.

Error to the Circuit Court of the United States for the Eastern Division of the Northern District of Ohio.

Action by Adelaide M. Smith against the Provident Savings Life Assurance Society of New York on a life policy. Judgment for defendant, and plaintiff brings error.

This is a writ of error to review a judgment for the defendant in an action on a policy of life insurance. The policy was for $15,000, and purported to have been issued by the Provident Savings Life Assurance Society of New York in favor of Adelaide M. Smith on the life of her husband, Adolphus C. Smith. The sole defense of the insurance company was that the policy never took effect as a binding contract. The application was made and the policy was dated December 15, 1891. The insured died December 30th of the same year. The application was taken at Cleveland by R. E. Spink, general agent of the company for Northern Ohio, and was forwarded to the company's offices at New York, where it was approved, and a policy and premium receipt returned to Spink. Smith, who had been made a subagent of the company by Spink in August preceding, called at Spink's office for his policy. Spink delivered it and the premium receipt to him, and, after a conversation, Smith went out with the policy. Smith did not pay the premium, but kept the policy and died a week later. The sole issues in the case are: First, whether Spink's authority was such, in view of the terms of the policy, his instructions, and his practice under them, known to the company, as to enable him to make a binding delivery of the policy without actually receiving the premium; and, second, whether, conceding his authority, he actually made such a delivery.

Among other stipulations of the policy were these:

"This policy does not go into effect until the first premium has been actually paid during the lifetime and good health of the within named insured. All premiums are due at the office of the society in the city of New York. For

the convenience of policy holders they may be paid to an authorized agent of the society, but only in exchange for a receipt signed by the president and secretary and countersigned by such agent. Failure to pay any premium or semiannual or quarterly installment thereof when due will thereupon terminate this policy.

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

"No agent is or will be authorized to make, alter, or discharge this contract, or to waive any forfeiture thereof, or to extend this insurance, or to grant permits, or to receive for premiums anything except cash."

The contract of agency between Spink and the company provided among other things as follows:

"That he will, and does hereby, become responsible for all moneys collected on behalf of the society by and passing through the hands of persons employed by him under this agreement, and for all policies and premium receipts intrusted by him to such persons.

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

"That he will furnish to and maintain with the society a sufficient and satisfactory bond in the sum of —— dollars for the faithful performance of all duties pertaining to —— agency, and for the prompt payment of all moneys received by —— or subordinate agents or brokers.

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

"That the society shall at all times have a first lien upon the commission or compensation accruing under this agreement, as security for all debts or liabilities of said party of the second part to the society accruing at any time during the continuance of this agreement.

"It is further mutually understood and agreed by the parties hereto that said party of the second part is not authorized to make, alter, or discharge contracts for the society, waive forfeitures, allow credits, grant permits, guaranty dividends, write receipts for premiums, or make any indorsement whatsoever on the policies of the society."

It is further in evidence that Spink delivered to Smith a manual for agents, issued by the company to its general agents, in which occurred the following directions:

"All premiums are payable at the office of the society in New York, but may be paid to the agent on presentation of a policy signed by the president and secretary, or of a renewal receipt signed by the president or secretary.

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

"You will receive no premium unless you have been furnished with a policy or receipt so signed, or with a binding receipt for advance payment of a first premium, as payment made to an agent without such evidence of his authority is not valid.

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

"The agent must in all cases countersign receipts when money is received."

And then on the same page, under the same head, but in a different section (section 5), occurs the following:

"Agents crediting or remitting premiums not actually received do so at their own risk, and must look to the policy holder for reimbursement. The society does not ask or desire you to take this risk."

In the same manual it was provided that "policies not taken or paid for within sixty days from the date of issue, and renewal receipts not taken and paid for within thirty days from the day on which they fall due, must be promptly returned to the home office." Evidence was given of the practice of Spink to deliver the policies to the accepted applicants some time before the amounts due for the first premiums were received by him. After this evidence was admitted, it was excluded on the ground that plaintiff had failed to show that the company had any knowledge of the practice. To show that the company was familiar with this practice on Spink's part, monthly reports, made by him to the company, were introduced in evidence. The monthly reports were made on a form which contained a column for the names of the applicants, one for the amount of the policy, one for the date when the premium was due,—which was the date of the application and the policy,—and one for date of actual payment. The reports for several months previous to the application of Smith showed that policies applied for in the beginning

of the month or later were generally paid for a day or two before the time when the agent was required to forward his monthly report. Because these reports did not show when the policies were delivered, it was held by the court below that they had no tendency to prove that the company was informed of Spink's practice to deliver policies in advance of payment, and they were excluded.

The following question was asked of a witness for the plaintiff: "Q. What is the custom of all life insurance companies, including the defendant, or what was it in 1891 and prior thereto, of permitting their general agents to deliver a policy of insurance to the assured, and extend to him a short credit for the payment of the first premium?" To which question the defendant objected, which objection was sustained. To this ruling the plaintiff excepted, and offered to prove by the answer to the question that it was the custom of all companies, and that they did permit their general agents, to extend a short credit to the assured for the payment of the first premium.

There was very little dispute as to what occurred at the interview between Spink and Smith when the latter received the policy. Smith went to Spink's office, and inquired of him whether the policy had come. Spink's book-keeper, who had charge of the policies, got the policy, and handed it to Spink, and Spink handed it to Smith. Smith opened and examined it. While he was doing so, Spink turned to his desk, calculated the amount due from Smith after crediting him with his commission, and handed it to Smith with the remark, "That will be the amount of your check." To this Smith replied, "Yes, that is right." Smith then complained that Spink had not obtained the exact form of policy he wished. Spink replied that it was the form mentioned in Smith's application; that he had tried to get the other form, but that he supposed the company were not willing to issue it for so large a policy. "Well," said Smith, "I don't like it all the same." About that time Spink was called to the telephone, and remained away about 10 minutes. When he returned, Smith had gone with the policy, and they never met again. Spink did not send or write to Smith for the policy, nor did he send to him for the premium. His explanation of his not doing so was that he expected him every day, because he usually came in every morning. Smith died about a week or 10 days after this interview.

It further appeared in evidence by another witness that Smith was in the office every day between August and December 15th, and at least once between the time he received the policy and his death, but that he did not see Spink. The policy and receipt were found in Smith's safe-deposit box after his death, with another policy for $5,000 in the same company, taken out by him in 1887.

Spink, the general agent, was called by the plaintiff in the opening of the case to prove the contract between himself as general agent and Smith as subagent, and to prove the delivery to Smith of the manual for agents above referred to, and the fact that the appointment of Smith as subagent had been communicated by him (Spink) to the company. Spink was called as a witness for the defendant to testify generally in the case, and especially with reference to the circumstances under which Smith obtained possession of the policy and the receipt. In rebuttal, after having laid the proper foundation with Spink, the defendant called two witnesses to prove that Spink had said to them, after Smith's death, when they called upon him in the interest of Mrs. Smith, the plaintiff: "I delivered the policy to Mr. Smith, and also the premium receipt." "I expected that he would pay for it or make settlement for it." "I expected him to send me a check." This evidence, which was given without the hearing of the jury, was not allowed to be submitted to them by the court on the ground that, having called Spink to prove part of her case, it was incompetent for the plaintiff to impeach him, even with reference to the subject-matter to which he had been called upon to testify on behalf of the defendant. This ruling of the court was objected to by the plaintiff, and an exception taken. At the conclusion of all the evidence, on motion of the defendant, the circuit court directed the jury to bring in a verdict for the defendant.

Boynton & Horr and J. B. Burrows, for plaintiff in error.

J. E. Ingersoll and W. B. Sanders, for defendant in error.

Before TAFT and LURTON, Circuit Judges, and SEVERENS, District Judge.

TAFT, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

The sole issue in the court below was whether the policy took effect as a contract, and it depended on two questions: First. Had Spink, as general agent of the defendant company, authority to bind it by delivering the policy and receipt to the applicant without receiving the premium in cash? Second. Did Spink and Smith intend a binding delivery and receipt of the policy? If, in every reasonable view of the evidence, either question must be answered in the negative, the action of the court below was right. But if, in any reasonable view of the evidence, both may be answered in the affirmative, then the judgment of the circuit court must be reversed.

1. Section 5 of Spink's instructions from his principal was:

"Agents crediting or remitting premiums not actually received do so at their own risk, and must look to the policy holder for reimbursement. The society does not ask or desire you to take this risk."

This rule assumes that an agent may have made one a policy holder by delivery of the policy without actually receiving the premium. The effect of it is that in such a case the agent becomes absolutely liable to the company for the premium, and must pay it exactly as if he had received it, his only recourse being against the policy holder. But such a condition is wholly inconsistent with the contention for defendant that, without actual payment of the premium by the applicant, the delivery by the agent is without authority, and void, giving no life to the policy as a contract. It is true that the contract of Spink with the company expressly withholds any authority to give credit, but, in view of section 5, this must be interpreted to mean credit for the company. His right to assume the payment of the premium himself and deliver the policy, taking the risk of collecting from the policy holder, is plainly recognized, though his exercise of it is not apparently encouraged. Spink had given bond to the company for the faithful performance of his duties and the prompt payment of all moneys received. He had also given the company a lien on all commissions due him, to secure all his liabilities to the company. The power of the company to enforce payment of any obligation assumed by him under section 5 was ample. It is said that section 5 can have no effect to give the agent any additional authority in his dealings with the applicants for policies, but is only intended as a penalty to be visited on the agent for exceeding his authority, and that the company may keep the money paid or credited by the agent on account of the policy, and at the same time refuse to ratify his act in delivering it. It seems to us that the mere statement of the proposition is its refutation. The words of section 5 are carefully selected not to forbid the practice of agents to deliver policies without actually receiving the premiums, while at the same time they shift all danger of loss from such a practice to the agent. The offering of credit on the first payment is a tempt-

ing inducement to many intending to take a policy, and in the strenuous competition between life insurance companies for business is a consideration which may often turn the scale in favor of the more accommodating company. The defendant company could be reasonably sure that, if the authority to give credit at their own risk was not absolutely denied to their agents, their desire to increase their commissions by a large business would be motive enough for them to assume the risk. Section 5 is strong evidence that the company was aware of the practice of their agents to give credit, and justified the introduction of testimony that it was Spink's practice to do so. It is argued that the evidence of Spink's practice of giving credit is confined to three cases. The statement of one witness is much more general than this, and justifies the inference that the specific instances testified·to were not by any means isolated or exceptional cases.

In Miller v. Insurance Co., 12 Wall. 285, 303, which was a case very like this in its facts, Mr. Justice Clifford, speaking for the supreme court, said:

"Evidence of the most convincing character is reported, showing that it ·was the custom of the agents to give credit in certain cases to persons with whom they were well acquainted, and knew to be responsible, and not to call for the money at the time the policy was delivered; and one of the instructions given to such agents affords a strong presumption that the custom was known to the company, as the instruction states that agents must not deliver policies until the whole premiums are .paid, as the same will stand charged to their account until the premiums are received or the policies are returned to the office."

If such an instruction afforded a presumption of knowledge by the company of the practice of agents to deliver policies without receiving premiums, the instruction we have in this case is even more significant. For this reason we are of the opinion that the court below. erred in excluding evidence of Spink's practice of giving credit on first premiums. On the whole evidence, both that admitted and that erroneously excluded, it seems clear to us that the circuit court should have submitted to the jury the issue whether Spink had actual authority to deliver binding policies without actually receiving the premiums. The provision in the policy that it shall not take effect unless the premium is actually paid, if it stood alone, would, of course, limit the agent's authority to deliver a policy until he had received a cash premium; but the section 5, and the practice already referred to, show a greater actual authority than the words of the policy would imply, so that a delivery by the agent of a policy without receiving payment would constitute a waiver of any such provision. Smith, to whom the policy in this case was delivered, was a subagent of Spink, and had a set of the company's instructions, including section 5, in his possession, for his guidance, for nearly six months. More than this, he was in Spink's office every day, and may be presumed to have known Spink's practice in giving short credit for first premiums by virtue of section 5.

In Miller v. Insurance Co., supra, which was a case involving the power of a general agent to deliver a policy without receiving the cash premium, the instructions to the agent were as follows:

"Agents must not deliver policies until the whole premiums are paid, as the same will stand charged to their accounts until the premiums are received, or the policies returned to the office. Agents are not authorized to make, alter, or discharge contracts, waive forfeitures, name an extra rate for special risks, or bind the company in any way; their duties being simply to obtain applications for insurance, to collect and transmit premiums, and generally to be the medium of communication between the policy holder and the company. Agents are not authorized to write the receipt of premium, or make any indorsement whatever on the policy. The president and secretary are alone authorized to sign receipts for premiums on the part of the company. When a receipt is delivered to a policy holder by an agent, such agent must countersign the same as an evidence of payment to him."

And the condition of the policy was as follows:

"It is agreed by the undersigned * * * that the policy of assurance hereby applied for shall not be binding upon this company until the amount of premium as stated therein shall have been received by said company, or some authorized agent thereof, during the lifetime of the party therein assured."

Said Mr. Justice Clifford (page 303):

"Attempt is made in argument to show that general agents have no power to waive such a requirement, or to deliver the policy to the insured without first exacting the payment of the cash premium; but the court here, in view of the circumstances of this case, is entirely of a different opinion. Where the policy is delivered without requiring payment, the presumption is—especially if it is a stock company—that a credit was intended; and the rule is well settled, where a credit is intended, that the policy is valid though the premium was not paid at the time the policy was delivered, as, where credit is given by the general agent, and the amount is charged to him by the company, the transaction is equivalent to payment;" citing Boehen v. Insurance Co., 35 N. Y. 131; Sheldon v. Insurance Co., 26 N. Y. 460; Wood v. Insurance Co., 32 N. Y. 619; Trustees of First Baptist Church v. Brooklyn Fire Ins. Co., 19 N. Y. 305; Bragdon v. Insurance Co., 42 Me. 259.

While there is some difference between the case at bar and Miller v. Insurance Co. in the facts, the ruling of the supreme court in that case is controlling in this. There is stronger ground in this case for holding that the general agent had actual authority to waive the payment of premium, and to substitute therefor his personal obligation to the company, than in the case cited, for the instruction in the Miller Case forbade agents to deliver policies until the whole premium was paid, while here the instruction is carefully framed not to forbid it, and impliedly permits it, but holds the agent responsible for risk of loss.

2. The evidence upon the point whether what transpired between Spink and Smith was intended to be a delivery of the policy would doubtless not justify a peremptory instruction to the jury that it was, in legal effect, a delivery; but it is quite clear that the evidence did not justify the instruction which was given. It is admitted that Spink handed the policy to Smith, and that Smith kept it. Unexplained, that would have been a delivery. The cases already cited show that, in the absence of evidence to the contrary, the intention of the agent to deliver will be presumed from a manual tradition of the policy. We certainly find nothing in the record in this case which so completely overcomes this presumption as to justify a withdrawal of the issue from the jury.

Spink says that he made a calculation to show Smith how much was due on the premium after crediting his commission, and that

Smith agreed that it was right. The whole claim for the defendant rests on Smith's expression of disappointment that Spink had not succeeded in getting him a form of policy which he liked. But it is to be observed that the policy which he got was the one called for by his application. This circumstance justifies the inference that he feared he could not get the other form of policy, and, if he could not, that he intended to take the one for which he had made formal application. The remark, "I do not like it all the same," a jury might fairly construe to be a merely grumbling remark, not intended to qualify his acceptance of the policy as a binding contract. The conduct of both Spink and Smith thereafter tends to show that they regarded the change of possession as a delivery. Smith put the policy in his safe-deposit box, with his other life insurance policy, while Spink made no effort to recover the policy. Spink admits that he was not afraid to give Smith credit for the premium. He certainly knew, and it may fairly be inferred, that Smith knew also that credit was often extended on first premiums. The failure to pay cash is not, therefore, of much significance to show that no binding delivery was intended.

On the whole case, the issues raised were for the jury, both as to the actual authority of Spink to make a binding delivery of a policy and as to his having done so, and the court erred in not submitting them to that tribunal.

Other questions are raised upon the record. It is contended that the court below erred in excluding evidence to contradict Spink as to statements made by him to friends of the plaintiff, after Smith's death, inconsistent with his evidence given when called for the defendant. Spink had been called by the plaintiff to prove certain material facts, namely, that Smith had had a manual of the company's instructions to agents furnished him, that he was a subagent of the company, and that the company knew it. It was not proper, after using him as a witness to this extent, to attempt to impeach him, even with respect to facts testified to by him when a witness for the defendant. Ellicott v. Pearl, 10 Pet. 412–440.

We think the court was right in excluding the reports which Spink made to the company. They did not show the dates when the policies were delivered by him, but only the dates of payment of the premiums. They contained nothing inconsistent with his having held the policies till the premiums were paid.

The plaintiff sought to establish a general custom by which general agents of life insurance companies exercised an authority to grant short credits on first premiums. We have held that evidence of general custom is permissible on questions of agency. Insurance Co. v. Waterman, 6 U. S. App. 549, 4 C. C. A. 600, 54 Fed. 839. But the offer here made did not cover the case. The policy here provided that it should not go into effect until the premium had actually been paid, and expressly stated that the agent could not waive the stipulation. The offer was not to show that the custom prevailed in the issuance of such a policy. Such express limitation of authority brought to the knowledge of the policy holder could not be enlarged by a general custom prevailing in the absence of such a limitation.

It can only be enlarged by showing a greater actual authority than that expressly given in the policy. The ruling of the court below was right.

It is objected by defendants in error that there is no proper bill of exceptions here, because the case was tried and verdict rendered at the February term, 1894, while the bill was not signed until the April term. It appears, however, from the record that a motion for a new trial was made at the February term, and by order of court the hearing of the motion was continued until the next term, and by leave of this court and consent of counsel, since the submission of the case in this court, the clerk of the circuit court has certified to this court an order entered at the February term, 1894, expressly giving plaintiff leave to file her bill of exceptions after the disposition of the motion.

Defendant objects that no tender has been made by Mrs. Smith of the premium, and therefore that no recovery can be had. Tender to the company is not necessary, because, if there was a delivery, and the policy took effect, the company received Spink's absolute obligation to pay; and under section 5 of the company's instructions to agents it is Spink to whom Mrs. Smith owes the balance due on the premium. As between Mrs. Smith and the company, there was payment.

The judgment of the circuit court is reversed, at defendant's costs, with instructions to order a new trial.