BUTLER, District Judge.
The suit is on a policy of insurance issued by the plaintiff in error to James Getty, Jr., insuring him against accident, for one year. Just before the expiration of this period the company forwarded a renewal receipt to its agent and charged him with the premium. He delivered the receipt to Getty, and thus extended the policy, on the latter’s promise to pay at a future time. It was the habit of the company thus to forward policies and renewal receipts and charge premiums, to its agents, and it was the practice of this agent, Mr. Scott, to deliver policies and receipts without exacting prepayment of premiums due, where he had confidence in the assured. He had so dealt with Getty previously. The policy in suit contains the usual provision that it “shall not take effect unless the premium is paid previous to any accident under which claim is made”; and further that its terms cannot be waived or modified by an agent without the approval by the president or secretary of the company.
At the close of the testimony the company requested the court to charge as follows:
“(1) That the insured, James Getty, Jr., by accepting and retaining the policy of insurance, without objection, assented to all its terms and conditions; more particularly (a) he assented and agreed that the policy should not take effect unless the premium should be paid previous to any accident under which claim *498 might be made; and (b) he agreed that the terms of this policy could not be waived by any agent of the insurance company, and that any modification of the policy should not be valid unless indorsed thereon by the president or one of its secretaries.
“(2) The insured, James Getty, Jr., had knowledge, either actual or presumptive, that the agent of the defendant company, Mr. Scott, had no power to waive or modify any condition of the policy, including that provision of the policy which required prepayment of the premium before an accident.
“(3) The defendant’s agent, Mr. Scott, could not bind his principal, the defendant, by waiving payment of the renewal premium when Getty, the insured, knew that he had no po-wer to make such waiver.
. “(4) It is immaterial -whether Mr. Scott was a general agent or a subagent of the defendant company, so far as his right to waive any condition of the policy was concerned.
“(5) Where the contract of insurance expressly provides by its terms, the particular manner in which a condition of the contract may be waived or modified, no other attempted waiver will be permitted to modify the contract.
“(6) The mere delivery of the renewal receipt did not give the policy force, because, by its terms, it -was expressly stipulated between the parties that it should not take effect unless the premium should be paid previous to an accident. The failure to pay the premium simply suspended the policy until the premium should be paid.
“(7) The possession by the plaintiff of the renewal receipt is merely presumptive evidence that the premium was paid, and is not binding upon the company, unless the jury find that the money was actually paid.”
The court declined to charge as requested, but instructed the jury, inter alia, that:
“If you find from the evidence that it was the usual course of dealing between the defendant company and Mr. Scott, its general agent, for the company to charge Mr. Scott, as its debtor, for the premiums on policies of insurance, and on renewal receipts transmitted to him for delivery, and that in this particular instance the company, when it transmitted the renewal receipt of June 7, 1895, charged Mr. Scott as its debtor with the premium of $50, named in the receipt, then, for the purpose of this case, that premium must be regarded as paid to the company, as between the company and Mr. Getty, or his personal representatives, or cash payment thereof must be deemed to have been waived and the nonpayment of the premium by Getty to Scott under the circumstances would constitute no defense to this suit.”
While the court so charged it nevertheless reserved the legal question raised by the points, whether the plaintiff is entitled to recover under the facts.
The jury rendered a verdict for the plaintiff below, as follows:
“The jury find for the plaintiff in the sum of ten thousand, five hundred and seventy-three and sa/ioo dollars, subject to the opinion of the court upon the question of law reserved—whether the nonpayment by Mr. Getty of the renewal premium mentioned in the renewml receipt of June 7, 1895, (pro ut) constitutes a defense to this action upon the facts established by the verdict, namely, that it was the usual course of dealing between the defendant company and Mr. Scott, its general agent, for the company to charge Mr. Scott as its debtor with the premiums on policies of the insurance and on renewal receipts transmitted to him for delivery, and that in this particular instance the company, when it transmitted the renewal receipt of June 7, 1895, charged Mr. Scott as its debtor with the premium of $50 named therein; and Mr. Scott having delivered the renewal receipt to Mr. Getty without requiring cash payment of the premium.”
The court subsequently ruled the reserved question against the company, and ordered judgment accordingly. To this ruling the company excepted,—as it had done to the admission of some testimony produced to prove payment,—and brought the case here, *499 assigning numerous alleged errors. A separate consideration of these assignments is unnecessary. The first, which is to the part of the charge above quoted, covers the entire complaint, except as respects the admission of testimony, mentioned.
As the court below said when considering the question reserved, “the verdict of the jury establishes that it was the usual course of dealing between the company and its agent, Mr. Scott, for the company to charge Scott as its debtor with the premium on policies of insurance and on renewal receipts transmitted to him for delivery, and that in this particular instance the company when it transmitted the renewal receipt of June 7, 1895, charged Mr. Scott as its debtor with the premium of $50 named in the receipt. The question of law reserved is whether under the circumstances the fact that the renewal premium was not actually paid by Getty to the company constitutes a defense.” And this is the main question raised by the assignments of error. If it was new, difficulty might be found in answering it. It is not new, however. It was involved in Miller v. Insurance Co., 12 Wall. 285; Elkins v. Insurance Co., 113 Pa. St. 386 [6 Atl. 224]; Insurance Co. v. Carter (Pa. Sup.) 11 Atl. 102; Insurance Co. v. Hoover, 113 Pa. St. 591 [8 Atl. 163]; and numerous other cases which need not be cited. It is urged, however, on behalf of the plaintiff here, that Miller v. Insurance Co. is distinguishable from the case before us, and that all the other cases cited, which followed it, were decided under a misapprehension of that case. The only distinction pointed out consists in the fact that the Brooklyn Company instructed its agents that if they delivered policies without exacting prepayment of premiums as the policies required, they would be charged with and held responsible for the amount. It is difficult to see the importance of this fact. The instruction was a caution, simply, to the agents, who would have been as clearly responsible for such premiums without it. The delivery of the policies under the circumstances would be a violation of duty, and would necessarily render the agents liable for the premiums. The caution did not therefore affect their obligations to the company. The court thought it tended, with other circumstances named, to support an inference of authority to deliver policies without exacting prepayment. This may be so; but its tendency in that direction is certainly no greater than is the charge, itself, against the agents, on forwarding policies for delivery. What the case decides is correctly stated in the syllabus, as follows:
“Where an insurance company instructed its agents not to deliver policies until the whole premiums are paid, ‘as the same will stand charged to their accounts until the premiums are received,’ and the agent did nevertheless deliver a policy, giving a credit to the insurer and waiving a cash payment, * * * the company was hound.”
Under the circumstances of that case, and of the one before us, the charge against the agent and delivery of the policy, or premium receipt, to the assured may be treated as a transfer of the assured’s indebtedness to the agent, and consequently a payment as between the former and the company; or as an estoppel of the company *500 against setting up the stipulation for prepayment of the premium in avoidance of the policy. We are not called on to consider the reasonableness of this rule; it has become a part of the law of insurance. Companies can avoid it by avoiding the facts on which it rests, but in no other way.
The exceptions taken to the admission of evidence cannot be sustained. The evidence was competent to prove payment, under the circumstances shown, and the rule above stated.
The judgment is therefore affirmed.