**STUYVESANT INS. CO. v. SUSSEX FIRE INS. CO.**

No. 5883.

Circuit Court of Appeals, Third Circuit.
March 13, 1937.

Rehearing Denied July 7, 1937.

Robert Kelly Prentice, of New York City (Albert C. Wall, Thomas G. Haight, and John A. Hartpence, all of Jersey City, N. J., of counsel), for appellant.

Arthur T. Vanderbilt, of Newark, N. J. (G. Dixon Speakman, of Newark, N. J., of counsel), for appellee.

Before BUFFINGTON and DAVIS, Circuit Judges, and AVIS, District Judge.

AVIS, District Judge.

The general facts developed in this case show that Essex Fire Insurance Company, a corporation (hereinafter called Essex), conducting a general fire insurance business, issued a number of policies to persons in North Carolina. These policies were issued through a general or state agent, one P. Lester Hawks, or P. Lester Hawks, a corporation (either of which will be hereinafter referred to as Hawks), having offices in Richmond, Va. In 1931, Essex, being desirous of discontinuing its business and liability in North Carolina, directed Hawks to secure reinsurance as to all of said outstanding policies. Hawks, who was also agent for Stuyvesant Insurance Company (hereinafter called Stuyvesant), arranged with that company for such reinsurance, and there was issued to Essex three certain policies; Nos. 220, 221, and 222. The respective premiums

charged for said policies were $2480.68, $343.53, and $8653. Policies Nos. 220 and 221 bore date on or about September 29, 1931, and policy No. 222 was issued and dated October 17, 1931. The total premium on the three reinsurance policies was $11,477.21. At that time, because of some other items of premium owed by Essex to Hawks, the total amount due from Essex to Hawks was $11,993.89, and Hawks owed Essex for premiums on policies issued the total sum of $8883.52.

At the end of October, 1931, business, Hawks reported to Stuyvesant the issuance of the above-numbered policies of reinsurance, at a total premium of $11,477.21, and the evidence apparently shows that this amount, less commissions, was charged on the books of Stuyvesant against Hawks, and never charged by that company on its books against Essex.

From the testimony it does not appear that anything affecting the issues involved occurred with relation to the business relations of the parties to the action, until December, 1931.

Sussex Insurance Company, the plaintiff-appellee (hereinafter called Sussex), at the time the above transactions took place, was also issuing policies of insurance through Hawks, as its general or state agent, and around December first there was owing to Sussex from Hawks the sum of $5,497 for premiums on policies issued by Hawks.

At that time Essex and Sussex were separate and distinct corporations, although the greater part of the stock of Essex was owned by Sussex, and the same persons were respectively president and secretary of both companies.

Some time early in December, 1931, some representative of both Essex and Sussex visited the Hawks agency in Richmond to investigate and consult with relation to the settlement of accounts. At that time it was apparently agreed that Hawks owed Sussex $5,497; and that Essex owed Hawks $3,110.37, the difference between the items $11,993.89 (which included the premium charge for reinsurance) and the item $8,883.52 (the amount due from Essex to Hawks).

On December 12, 1931, Hawks gave to the representative of Sussex a check for $5,497 upon the understanding that the check would not be presented for payment until Essex forwarded to Hawks a check for $3,110.37, the balance due to Hawks on its account. This arrangement was made apparently in full settlement of all matters on that date, and the check for $5,497 was to be held, because Hawks' account in the bank would not be good for the full amount, until the $3,110.37 check was deposited therein. This settlement agreement was consummated on or about December 14, 1931.

On December 31, 1931, Essex merged with Sussex under the title Sussex Insurance Company, and the latter company took over all assets, and assumed all liabilities, of Essex.

On or about March 1, 1932, Hawks forwarded to Stuyvesant his check for $4,500, stated to be "Part Payment on October Account." Something is said in the brief of appellee that this remittance was accompanied by a letter in which Hawks requested that the check be applied in payment of his account on the reinsurance premiums in question, and that Stuyvesant replied it would apply the proceeds thereof to such portion of the general agency indebtedness as it saw fit, and refers to Exhibit D–11. Neither of these exhibits appears in the record, and probably have no effect upon the result.

Each of the reinsurance policies contained the following clause as to cancellation: "This policy may be cancelled at any time by the company by giving to the insured a five days written notice of cancellation with or without tender of the excess of paid premium above the pro rata premium for the expired time, which excess, if not tendered, shall be refunded on demand. Notice of cancellation shall state that said excess premium (if not tendered) will be refunded on demand."

The evidence shows that on March 29, 1932, Stuyvesant sent a letter to Sussex canceling all three of the policies of reinsurance, effective five days from the receipt thereof, alleging nonpayment of premium. This letter was received by Sussex on March 30, 1932, and it is claimed by Stuyvesant that the policies were null and void after April 5, 1932. Sussex, on the other hand, claims that the premium was paid, in the manner hereinbefore set out, and that Stuyvesant could not so cancel the policies without tendering the excess of said premium above the pro rata premium for the expired time. The provision of the policy as to cancellation, relating to notice of refund of premium, is not applicable because Stuyvesant claimed

none had been paid, and, in fact, no statement as to refund was contained in the letter of cancellation.

The facts claimed by plaintiff, and not disputed, are that a loss occurred under its policy, No. 325372, issued to Fibercraft Chair Company, by reason of a fire happening on April 6, 1932, and that another loss occurred under its policy, No. 325370, issued to I. D. Redmon, by reason of a fire happening on May 4, 1932. The former loss was adjusted by Sussex ultimately for $2736.66, and the latter for $2,000.

Upon request of Sussex for settlement of these claims, Stuyvesant refused to adjust or pay them, alleging its nonliability under reinsurance policy No. 220, under which the aforesaid risks were reinsured. Sussex paid both of the insured, and the suit at law was instituted to recover from Stuyvesant the amounts so paid, with some incidental expenses and interest.

Stuyvesant denied liability, claiming nonpayment of premium and cancellation, and filed a counterclaim demanding of Sussex the earned premium on each of the policies from the time of issuance to the date of cancellation. The counterclaim demanded $1,178.80 on policy No. 220; $218.82 on policy No. 221, and $5,849.24 on policy No. 222.

The issue was tried before the court without a jury, by stipulation of counsel; a verdict rendered for Sussex, and judgment entered in the sum of $5,780.94.

Although all of the above-recited facts do not appear in the oral testimony or exhibits offered, the discussions between the court and counsel seem to establish the facts as herein stated, and the briefs submitted by both sides, as we understand them, assume that such facts have been established for the consideration of this court on appeal.

Before discussing what it seems to us is the real issue, it may be desirable to dispose of some questions raised in the briefs which appear immaterial to a proper decision.

■ Counsel for appellant has assigned as error certain rulings of the court on the admission or rejection of testimony and other proofs and claimed exhibits submitted. We do not feel that these exceptions are important, as the facts which it was intended thereby to prove, so far as relevant, have been stated or admitted by counsel in the record, and all parties appear to be agreed as to what the facts are by statements in their briefs.

■ Counsel for appellee raises the question as to the determination of facts by the trial court, and asserts that findings of fact are conclusive on appeal, unless there was no evidence to support them. That is undoubtedly the rule of practice, and it is not necessary to cite cases to sustain or deny it. But findings of fact must be based upon evidence, and must not be mixed with findings of law. The claimed finding of fact relied upon by appellee is with relation to the release of the liability of Essex for the payment of premium to Stuyvesant, and in the rule for judgment appears the following language: "and having found as a fact that it was the practice for the defendant to charge its agent for the premiums on policies of reinsurance and that it did in this case charge the agent for the policies of reinsurance issued to the plaintiff and debited the premiums for the policies of reinsurance issued by defendant to plaintiff to its agent, and looked to its agent ultimately for payment, and having found that the plaintiff had paid the amount of the premiums for the policies of reinsurance issued by defendant to plaintiff to the agent of the defendant. * * *" (Record, p. 179.)

The difficulty about the latter part of this alleged finding is that there was no testimony that Stuyvesant "looked to its agent ultimately for payment" or that the "plaintiff had paid the amount of the premiums for the policies of reinsurance issued by defendant to plaintiff to the agent of the defendant."

■ These were both matters of contention with relation to the law applicable to the actual facts in the case. They relate to the findings of the court on the facts and law as applied in the decision to enter judgment in favor of plaintiff. Consequently this court is not bound by the findings to the extent of assuming that the statements above set forth prevent this court from determining whether the fact and law justified the verdict.

The difficult question involved is whether an insured may satisfy its debt to insurer, by payment to an agent exercising authority to the extent that Hawks did for Stuyvesant and under the circumstances detailed, by setting off the indebtedness of the agent to the insured.

■ We are convinced that ordinarily where an insured has not, in some way, paid the premium, that the insurer may collect direct, unless the agent has paid his principal, in which case the insured would be indebted to the agent. See Alliance Ins. Co. v. City Realty Co. (D.C. M.D.Ga.) 52 F.(2d) 271.

■ It is claimed by appellant that under no circumstances, and in no case, may an insured satisfy the claim of the insurer by making settlement with an agent on any other basis than by payment in cash. It is conceded that payment in cash to an agent will discharge insured on the obligation to insurer, regardless of whether agent remits to insurer.

Appellee insists and argues that settlement with agent by way of offsetting claims is approved by the courts of Virginia, where it alleges the contract was made, and further, that in the federal and state courts this method has received approval in many reported cases. It seems that the question has been discussed in a number of such courts, and there is an entire lack of uniformity in the decisions. The Virginia cases cited by counsel for appellee seem to hold that such a settlement is legal and binding.

The state of the law, as hereinbefore stated, is unsettled, and the cases cited by counsel on both sides, in many instances, have no application to the specific question to be determined in the instant case. Some are general in principle as to the ordinary relationship of principal and agent, where the agent is merely a clerk or messenger of the principal. All of the cases cannot be analyzed.

As suggested, it would appear that in Virginia the doctrine of offset has been approved, but we think that the weight of authority in the federal courts tends to the adoption of that principle, where the facts are as in the instant case.

■ In the case of Miller v. Brooklyn Life Insurance Company, 12 Wall.(79 U.S.) 285, 303, 20 L.Ed. 398, the court said: "Where the policy is delivered without requiring payment the presumption is, especially if it is a stock company, that a credit was intended, and the rule is well settled where a credit is intended that the policy is valid though the premium was not paid at the time the policy was delivered, *as where credit is given by the general agent and the amount is charged*

*to him by the company the transaction is equivalent to payment."* (Italics mine.) In a note to this paragraph, the court cited the following cases: "Goit v. Insurance Co., 25 Barb. [N.Y.] 189; Sheldon v. Atlantic F. & M. Insurance Co., 26 N.Y. 460 [84 Am.Dec. 213]; Wood v. Insurance Co., 32 N.Y. 619; Bragdon v. Insurance Co., 42 Me. [259] 262; Trustees [of First Baptist Church] v. Insurance Co., 18 Barb. [N.Y.] 69; Id., 19 N.Y. 305."

The above quotation is approved in the case of Smith v. Provident Sav. Life Assur. Soc. of New York (C.C.A. 6) 65 F. 765, on page 771, and that court said: "While there is some difference between the case at bar and Miller v. Insurance Co. in the facts, the ruling of the supreme court in that case is controlling in this. There is stronger ground in this case for holding that the general agent had actual authority to waive the payment of premium, and to substitute therefor his personal obligation to the company, than in the case cited, for the instruction in the Miller Case forbade agents to deliver policies until the whole premium was paid, while here the instruction is carefully framed not to forbid it, and impliedly permits it, but holds the agent responsible for risk of loss."

In the instant case there was undoubtedly an understanding which permitted the agent to extend credit, and provided for the charging of the premium less commission to the agent by the insurer.

The paragraph set out from the Miller Case is quoted with approval in the case of Willey v. Fidelity & Casualty Co. (C.C. W.D.Pa.) 77 F. 961. On error to the Circuit Court of Appeals for the Third Circuit, this decision was affirmed (80 F. 497), and, generally, on the subject involved, the court said 80 F. 497, on pages 499, 500: "Under the circumstances of that case, and of the one before us, the charge against the agent and delivery of the policy, or premium receipt, to the assured may be treated as a transfer of the assured's indebtedness to the agent, and consequently a payment as between the former and the company; or as an estoppel of the company against setting up the stipulation for prepayment of the premium in avoidance of the policy. We are not called on to consider the reasonableness of this rule; it has become a part of the law of insurance. Companies

can avoid it by avoiding the facts on which it rests, but in no other way."

The same doctrine is approved in the case of Pennsylvania Casualty Co. v. Bacon (C.C.A. 2) 133 F. 907, pages 908 and 909, wherein the court said:

"The adjudged cases decide that general agents of insurance companies have authority to waive conditions in the policies declaring, in substance, that the policy shall not take effect until the payment of the premium, and hold that the delivery of the policy to the assured, with an agreement to give credit for the premium, is such a waiver; and many of them hold this to be so notwithstanding the policy provides that its terms shall not be waived or modified by an agent without the approval of some officer of the company. The cases in the federal courts which have sanctioned this ruling were those in which it appeared that the instructions of the company to its general agents were, in substance, that it would hold them personally responsible for such premiums (Miller v. Life Ins. Co., 12 Wall. 285, 20 L.Ed. 398; Smith v. Provident Savings Society, 31 U.S.App. 163, 65 F. 765, 13 C.C.A. 284), or where it appeared that it was the practice of the company to charge the premium to the agent at the time of delivering to him the premium receipt (Fidelity Company v. Getty's Administrators, 39 U.S.App. 599, 80 F. 497, 25 C.C.A. 593).

"These adjudications are not controlling in the present case, because the powers of subagents of the general agents of insurance companies are not commensurate with those of the general agents, and because it appears here that it was the practice of the company not to charge its agents with premiums until they were actually remitted."

In discussing the principle to be applied, the court, in the case of Aetna Life Ins. Co. v. Johnson (C.C.A. 8) 13 F.(2d) 824, on pages 826 and 827 said: "A further claim is made on behalf of defendant in error that the insurer waived the payment in money of the first premium by its method of doing business with its agents, Blewett & Severn. It is claimed that the insurer held the agents responsible for the premiums, and charged the amount of this particular premium to their account, and that this practice authorized the agents to deliver the policy. In support of this proposition are cited the cases of Miller v. Life Insurance Co., 12 Wall. 285, 20 L.Ed.

398, Smith v. Provident Sav. Life Assur. Soc., 65 F. 765, 13 C.C.A. 284, and Fidelity & Casualty Co. v. Willey, 80 F. 497, 25 C.C.A. 593. In Miller v. Life Ins. Co., it appears ([12 Wall. 285] page 298 [20 L.Ed. 398]) that the insurance company's instructions to its agents were that, if they delivered policies before the premium was paid, the premium would stand charged to the agents, and because credit for the premium was given by the general agent, and the amount was charged to him by the company, the transaction was regarded as equivalent to payment. In Smith v. Provident Sav. Life Assur. Co., it was held that the authority of a general agent to deliver a policy, giving credit for the amount of the first premium, could be inferred from a provision in the agency contract that 'agents crediting * * * premiums not actually received do so at their own risk, and must look to the policy holder for reimbursement. The society does not ask or desire you to take this risk.' In Fidelity & Casualty Co. v. Willey, it was held that a provision in a policy that it should not take effect until the premium was paid was waived on a renewal of the policy, by a course of dealing between the company and its agent, whereby the renewal receipts were transmitted to the agent, and the company charged the amount of premiums to the agent."

The court in that case determined against the insured on the basis that there was no evidence of the practice of giving credit, nor did the insurer charge the agents with the amount of premiums on policies sent for delivery.

The general question of the effect of waiver and charge of premium to agent is discussed in the case of Schwartz v. Northern Life Ins. Co. (C.C.A. 9) 25 F. (2d) 555.

As to approval by the federal courts of the doctrine established in the case of Miller v. Brooklyn Life Insurance Company 12 Wall. (79 U.S.) 285, 20 L.Ed. 398, supra, see MacKelvie v. Mutual Ben. Life Ins. Co. of Newark (C.C.A. 2) 287 F. 660, 668; New York Life Ins. Co. v. Silverstein (C.C.A. 8) 53 F.(2d) 986, 989; American Ins. Union v. Lowry (C.C.A. 5) 62 F.(2d) 209, 211, 212; Williams v. Employers' Liability Assur. Corporation (C.C. A. 5) 69 F.(2d) 285, 287; Morrell v. Prudential Ins. Co. of America (C.C.A. 2) 75 F.(2d) 985, 987, 988.

286

The appellant upon the issuance of the policies by Hawks, and in pursuance of the monthly report, charged Hawks with the premiums and permitted the issuance of the policies without requiring the payment of premiums to it, and it is apparent that Stuyvesant, at that time, looked to Hawks ultimately for payment of the premiums. This action, under the circumstances, and in view of the fact that fraud is not alleged or claimed, we believe, authorized Hawks to make such settlement with appellee as he might deem proper; and while appellee would have been liable for premium to appellant, if no settlement had been made with Hawks, we are satisfied that payment to Hawks by offsetting amount due from Hawks to appellee was authorized by appellant, and that premiums had been fully paid. The result is that appellant could not cancel policy without tendering unearned premium to insured. It is admitted that this was not done, and the judgment of the District Court is therefore affirmed.