GAUSE v. SECURITY LIFE INS. CO. OF
AMERICA. (No. 8937.)

(Court of Civil Appeals of Texas. Ft. Worth.
Nov. 23, 1918.)

1. INSURANCE �આ138(2) — ACTIONS FOR PRE-
MIUMS—DEFENSES.

Under Vernon's Sayles' Ann. Civ. St. 1914,
art. 4954, prohibiting discrimination between
insurants, an agreement of an insurance com-
pany to lend money to one at a low rate of in-
terest if he would take out a certain amount of
insurance, not being mentioned in the policy,
was void, and the policy holder could not in an
action on a note given as a premium set up the
defense that the insurer refused to lend the
money.

2. INSURANCE �આ131(1)—SCOPE OF CONTRACT
—STATUTES.

Vernon's Sayles' Ann. Civ. St. 1914, art.
4953, providing that insurance policies shall
contain the entire contract, is binding upon the
insured as well as the insurer.

3. INSURANCE �આ129—MODIFICATION OF POL-
ICY—WHO MAY MODIFY.

Where an insurance policy provided that
only certain named officers had the power in
behalf of the insurer to make or modify any
contract of insurance, a promise of a general
agent in consideration of an application of in-
surance to lend the insured money was not bind-
ing upon the company.

4. INSURANCE �આ179½—LOANS—EQUITY.

Assuming that an agreement of an insur-
ance company to make a loan to be secured by
certain real estate, and the insurance taken
out could be deemed the legal and inducing
cause of the contract of insurance, it would not
be equitable to require the insurance company
to make a loan at some time subsequent to
the period for which the premium had been paid
by note and at a time when the insured was
delinquent as to the payment of such note.

Appeal from District Court, Tarrant Coun-
ty; Bruce Young, Judge.

Suit by the Security Life Insurance Com-
pany of America against George L. Gause.
Judgment for plaintiff, and defendant ap-
peals. Affirmed.

Slay, Simon & Smith and I. T. Valentine,
all of Ft. Worth, for appellant.

B. K. Goree, of Ft. Worth, for appellee.

BUCK, J. This suit was instituted by the
Security Life Insurance Company of Ameri-
ca, hereinafter called "insurance company,"
against George L. Gause, to recover on a note
for $1,258.70, executed by said Gause in pay-
ment of the first year's premium on five sep-
arate policies of $5,000 each. Defendant ac-
knowledged the execution and delivery of the
note, but alleged that the agent of the insur-
ance company, before and at the time of the
execution of the note, represented to defend-

ant that if he would take out said insurance
policies and execute said note that plaintiff
would lend to defendant the sum of $15,000
at 5 per cent. per annum, taking as security
certain real estate owned by defendant in the
city of Ft. Worth, Tex., and also taking as
additional security said policies; that said
loan would be made to defendant at any time
during the year or life of said policies that
defendant should desire it; that said repre-
sentations induced defendant to take out said
insurance and execute said note, and had
they not been made defendant would not have
executed the note and taken out the insur-
ance. He further alleged that the representa-
tion was false and fraudulent in this, to wit:

"That said plaintiff failed and refused upon
the demand of this defendant, within the time
specified, to wit, during the life of said policy,
to make him a loan of $15,000, at 5 per cent.
interest, although this defendant offered the
security as represented to him by plaintiff
would be satisfactory and sufficient; and said
plaintiff has, at all times, failed and refused to
make said loan. That at the time said repre-
sentations were made to this defendant by the
agent of said plaintiff, said agent well knew
that the same were false and fraudulent, and
that said plaintiff would not make said loan,
and said representations were made for the
purpose to mislead and falsely and fraudulently
induce this defendant to execute said note."

It was further alleged that the considera-
tion for the execution of the note had totally
failed. Issues were joined by plaintiff's sup-
plemental pleadings on the allegations in de-
fendant's answer as to the alleged misrepre-
sentations, fraud, etc. Upon the conclusion
of the evidence, the court gave a peremptory
instruction for plaintiff, and defendant has
appealed.

Article 4954, Vernon's Sayles' Tex. Civ.
Stats., provides, in part, as follows:

"No insurance company doing business in
this state shall make or permit any distinction
or discrimination in favor of individuals be-
tween insurants (the insured) of the same class
and of equal expectation of life in the amount
of, or payment of, premiums or rates charged
for policies of life or endowment insurance,
* * * nor shall any such company or agent
thereof make any contract of insurance or agree-
ment as to such contract other than as ex-
pressed in the policy issued thereon; nor shall
any such company, or any officer, agent, solici-
tor or representative thereof, pay, allow or give
or offer to pay, allow or give, directly or indi-
rectly, as an inducement to insurance, any re-
bate of premiums payable on the policy, or any
special favor or advantage in the dividends or
other benefits to accrue thereon, or any paid
employment or contract for service of any
kind, or any valuable consideration or induce-
ment whatever not specified in the policy con-
tract of insurance * * * or anything of val-
ue whatsoever not specified in the policy."

[1] In Security Life Insurance Co. v. Al-
len, 170 S. W. 131, it was held that, in an

action on a premium note, parol evidence of an agreement between defendant and plaintiff's general agent that defendant should not be called upon to pay the note if he would help the agent secure other insurance, which defendant did, was objectionable as contradicting the terms of the note; that such a contract as claimed by defendant was made with him by the agent of the insurance company would be in violation of article 4954, supra, and constituted no defense to the note. It has also been held in Morris v. Ins. Co., 200 S. W. 1114, that an agreement of an insurance company to lend money to one at a low rate of interest if he would take out a certain amount of insurance, not being mentioned in the policy, was void under the article above quoted, and that a policy holder could not ask rescission of policy, in that he was deceived by a promise of this character. In the last-cited case Justice Hodges, speaking for the court, says:

"If the promise of the agents to make the loan at the reduced rate of interest is so connected and interwoven with the contract to pay the insurance premiums as to authorize a rescission of the latter upon proof that the promise was fraudulently made, then such a promise must have formed a material part of the actual consideration for entering into the insurance contract. Manifestly such a promise would be an 'offer to give * * * as an inducement to insurance' something of value, and should have been 'specified in the policy.' It is one of the evident purposes of the statute above quoted to prevent discriminations and secret agreements by which certain policy holders may be enabled to secure special favors as a consideration for their contracts of insurance. In this instance the policy of insurance was made an exhibit to the appellant's petition, and there is no contention that it contained the stipulation here insisted upon as a ground for rescission. Hence it falls within the prohibition of the statute.

"That being true, it logically follows that the appellant cannot insist that he was deceived by a promise which the agents could not legally make. He is charged with a knowledge of the provisions of the statute relating to such transactions; he will not be allowed to plead that he did not know that such limitations upon the power to make insurance contracts existed. He is therefore in no attitude to insist that he was the victim of a fraud perpetrated by the representatives of the insurance company."

[2, 3] Article 4953 of the Revised Statutes provides that insurance policies shall contain the entire contract. Under this article, it was decided in Knodel v. Life Insurance Co., 193 S. W. 1138, that a life insurance company was not bound by the parol promise of its agent that there would be no forfeiture of the policy for nonpayment of premium unless the beneficiary were first notified and thereafter defaulted. See Maryland Casualty Co. v. Robertson & Co., 194 S. W. 1140. In Knodel v. Insurance Company, supra, it is held, properly we think, that article 4953 is binding

alike upon the insured and the insurer. Moreover, it is provided in the policy in the instant case that only certain named officers have power in behalf of the company to make or modify any contract of insurance, etc., and the company is not to be bound by any promises or representations given by any person other than those mentioned. The uncontradicted evidence is the testimony of O. W. Johnson, secretary of the insurance company, on this point, to the effect that L. M. Generes, the agent of the company, had no authority to make representations of the character mentioned, or to do anything in the premises except to solicit and write insurance and to appoint agents for said purpose. Hence we conclude that the defendant below was not in a position to defeat the obligation to pay the note.

For another reason we conclude that the defendant did not place himself in a position equitably to demand a rescission of or to defend against the contract. The evidence shows that the note was executed January 31, 1911, payable September 1st thereafter; that no formal application was ever filed or made by Gause for a loan with the company; that on or about the date of maturity of the note the insurance company began to write letters to Gause calling attention to the fact that his note was past due and asking for a remittance or some satisfactory settlement. No answer seems to have been received from these several letters until March 29, 1912, more than six months after the expiration of the first year, in payment of the premium for which the note was given. In this letter Gause stated that:

"I will pay this note just as soon as I can make a turn, it will be looked after. I am desirous of securing a loan for $15,000.00 for a period of three or five years and it may be acceptable to your company to place this" on certain described property. "If you remember you and I looked this building over and I spoke of possibly wanting a loan, when you were making your trip through Texas."

[4] We think the evidence shows without controversy that no demand for the loan was made during the period of time covered by the first premium, and that no refusal by the company to make the loan occurred at any time prior to April 2, 1912. Even if the alleged representation of the agent as to the company's making the insured a loan at a cheap rate of interest could be held as an enforceable agreement or promise on the part of the company, or if it could be deemed the legal and inducing cause of the contract made, yet we do not think it could be reasonably contended that such promise or representation implied the obligation on the insurance company's part to make a loan to defendant at some time subsequent to the period for which the premium had been paid and at a time when the insured was delin-

quent as to the payment of the premium note. At the time the tentative application for a loan was made by Gause, the period for which the note had been given had expired by some 60 days and the note itself was long past due and unpaid. So much for the lack of equitable grounds presented. But we base our conclusions that the judgment must be affirmed upon the statutory reasons given.

We are of the opinion that we cannot disturb the judgment, and that all assignments must be overruled, and the judgment affirmed.

---

⬡═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes