MONTCLAIR BUILDING AND LOAN ASSOCIATION, complainant,

*v.*

JAMES MARTIN MILLER et al., defendants

[Decided April 28th, 1922.]

On appeal of Nellie L. M. Woodbury.

On appeal from a decree in the court of chancery advised by Vice-Chancellor Fielder, who delivered the following opinion orally:

"The title to the premises in question was held by the Montclair Savings Bank, it having been acquired under foreclosure of a mortgage covering property of which Mrs. Woodbury was then the owner. After taking title the Montclair Savings Bank made a contract or agreement with Mrs. Woodbury to convey the property to her for a specified sum, which I believe covered the amount due the bank under the foreclosure, with costs and expenses. That agreement defined the terms under which Mrs. Woodbury might again become the owner of the property. She failed to fulfill the contract upon the day fixed by the terms and several extensions were granted her which covered quite a period of time. Under the last extension, as well as under the original agreement, she had the right to take the title at any time prior to the date limited, provided she tendered the contract price, and, she did not need, for the purpose of taking title, the assistance of a dummy or any other person so far as the savings bank was concerned.

"It appears that after the date of the last extension she desired to take the title and give back a mortgage to the savings bank for a part of the purchase price and she contends, and the savings bank denies, that the savings bank was unwilling to take a bond and mortgage made by her and insisted that the title

should be conveyed to someone else who might make the bond and mortgage for the part of the purchase price agreed upon. It seems strange to me that the savings bank, having contracted to convey to her, should thereafter insist that it preferred a bond and mortgage made by an utter stranger, when the reason assigned by Mr. or Mrs. Woodbury for the refusal of her bond, was that they doubted her responsibility. The savings bank would be no more assured of the responsibility of a stranger on a bond than it would be of Mrs. Woodbury's responsibility; so that it seems rather improbable to me that that situation should have arisen. Mr. and Mrs. Woodbury testify that James Martin Miller was a dummy, who was to take title for them, having no interest himself in the property or in the purchase price and that that fact was made known to Mr. Goodell, who was president of the Montclair Savings Bank, and who acted for the savings bank in closing the title from the savings bank. Mr. Goodell denies that he knew Miller was a dummy. There is no evidence, except the bare assertion by Mr. and Mrs. Woodbury, denied by Mr. Goodell, that would lead Mr. Goodell to believe that Miller was a dummy. Miller may have been a purchaser of the equity that Mrs. Woodbury had under the contract and may have settled with her for whatever interest she thought she had in the property and in that way have become a purchaser of the property from her. If he was a dummy, if he had no financial interest in the transaction, why was it necessary for Woodbury to hand him the four or five hundred dollars which was the cash part of the transaction and have Miller pay it to Mr. Goodell? If it were known to Mr. Goodell, as Mr. Woodbury insists, that Miller was a dummy, and that the money put up was raised by Mr. and Mrs. Woodbury, it was not necessary to give the money to Miller and have Miller bring it in and hand it to Mr. Goodell. The fact that Miller had the money and produced it, together with Mr. Goodell's testimony, leads me to believe that it had not been made known to Mr. Goodell that Miller was a dummy and was not an actual, *bona fide* purchaser of the property. But assume that Mr. Goodell, as president of the Montclair Savings Bank, as a member of its board of di-

rectors, and as its agent or representative in closing the transfer of title from the bank to Miller, had actual knowledge of the fact that Miller was a dummy and was taking title for the Woodburys; assume that he had knowledge of such facts as would put him upon his inquiry or charge him with notice in law of the existence of the situation that the Woodburys contend for; assume also that Mr. Carlson, who was a director of the Montclair Savings Bank, and was also a director of the Montclair Building and Loan Association, had actual or constructive notice of the same situation, I do not think that the evidence shows notice that would bind the Montclair Building and Loan Association. Suppose that Goodell and Carlton did have actual or constructive notice, the situation then was that Miller, holding title in his own name, applied to the Montclair Building and Loan Association for a loan upon real property and represented himself to be the sole owner thereof; that the application was laid before the board of directors of the Montclair Building and Loan Association, of which board Mr. Carlson was a member, and Mr. Goodell was an *ex-officio* member, and after an examination of the property to ascertain its value, the board of directors of the Montclair Building and Loan Association voted to grant Miller a loan on his bond secured by his mortgage, leaving it to counsel of the association to ascertain the condition of the title by a title search, and Mr. Goodell was that counsel. My understanding of the law is that the knowledge Mr. Goodell or Mr. Carlson, or either of them, had acquired through their connection with the Montclair Savings Bank of the existence of facts such as are contended for by the Woodburys would not be imputed to another corporation in which they were interested, and that the Montclair Building and Loan Association, therefore, would not be charged with knowledge of facts known to those two individuals, not disclosed by a title search or brought to the attention of the board of directors of the building and loan association.

"I should add that the evidence does not show that Mr. Carlson, as a director of the Montclair Savings Bank, had knowledge that Miller took title from that bank as a dummy for Mrs. Woodbury.

"The Woodburys also contend that when the committee of the building and loan association, of which committee Mr. Carlson was a member, called at the Woodbury house to inspect the property in connection with Miller's application for a loan, they found Mrs. Woodbury in possession, and that, therefore, they and their corporation were put upon inquiry to ascertain what her interest in the property was. From the testimony I believe that on the occasion of this visit the members of the committee saw and conversed with Mrs. Woodbury and that they informed her they were there on the Miller application for a loan on the property, and that she led them to believe that she was occupying the property as a tenant and that she did not tell them Miller was not the owner of the property and that she was.

"I think that the Montclair Building and Loan Association is entitled to a decree in this cause for the amount secured by its mortgage, with interest and costs of suit.

"A second mortgage is presented by a man who was admitted as a party to this suit as a holder of a mortgage set up in the bill of complaint. The mortgage was made by the same Miller to the Bank of Montclair, a different organization from the Montclair Savings Bank. There is no evidence except that Mr. Goodell was connected with the Montclair Savings Bank as well as with the Bank of Montclair to show that the Bank of Montclair is chargeable with the notice that Mr. Goodell had, if he had it, acquired as an officer of the Montclair Savings Bank, that Miller was not the real owner of the mortgaged property, so that that mortgage appears to be a valid mortgage as far as the Bank of Montclair is concerned. In any event, it was assigned for value to Mr. Marshall, who now holds it, and he does not appear to have had notice of any kind that the mortgagor, Miller, had no authority to execute it. I think, therefore, that the mortgage now held by the defendant Marshall is a valid obligation and a charge and lien against the property, and in the decree there should be a provision that the amount of money due on it be paid to Mr. Marshall and the property in question should be sold to satisfy the amount due on the first mortgage as well as the second, the surplus to be paid into court."

*Mr. Absalom P. Bachman,* for the defendants-appellants. ·

· *Messrs. Edwin B. & Philip Goodell,* for the complainant-respondent.

*Mr. John L. Griggs,* for the defendant-respondent Raymond W. Marshall.

PER CURIAM.

The decree appealed from will be affirmed, for the reason stated in the opinion delivered by Vice-Chancellor Fielder in the court of chancery.

*For affirmance*—THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, KATZENBACH, WHITE, HEPPENHEIMER, WILLIAMS, GARDNER, ACKERSON, VAN BUSKIRK—15.

*For reversal*—None.