Argued February 8; reversed March 7, 1939

# UNION STATES LIFE INSURANCE CO. *v.* BERNERT ET UX.

### (87 P. (2d) 774)

Department 1.

*Donald K. Grant* and *Roy F. Shields,* both of Portland (Butler & Jack, of Oregon City, and Maguire, Shields & Morrison, of Portland, on the brief), for appellants.

*Robert R. Rankin,* of Portland (Wood, Matthiessen & Rankin, of Portland, on the brief), for respondent.

KELLY, J.  On January 7, 1933, defendant, Albert L. Bernert, made written application to plaintiff, Union

States Life Insurance Company, a corporation, for a single premium endowment policy of life insurance on his life in the amount of Fifteen Thousand Dollars ($15,000), payable at his death or at the end of the ten year period subsequent to the date of said policy.

On or about March 25, 1933, plaintiff issued a single premium endowment policy in accordance with said application and delivered the same to said defendant, Albert L. Bernert, the number of which policy being 2350.

In said application, there was included the following provisions:

"That if the first premium for the insurance hereby applied for be paid to the agent at the time of making this application and applicant so declares herein and receives from the agent the binding receipt attached hereto and if the policy be issued in form and amount at the regular rates of the Company as applied for, such policy shall take effect when this application is approved by the Company at its home office.

That if the said first premium be not fully paid at the time of making this application, or if the policy be not issued as applied for, such policy shall not take effect until it is delivered to me during my lifetime and good health and the amount of the premium thereon has been paid to the Company or its authorized agent."

Said policy, among other things, contains the following provisions:

"The consideration for this insurance, is the application for this Policy, which is made part hereof, and the payment in advance of the Single Premium of Ten Thousand Eight Hundred Sixteen and 50/100 Dollars the receipt of which is hereby acknowledged

All of the provisions, conditions, benefits and privileges set forth on the following pages are made a part of this contract."

This policy and the application therefor (a copy of which application is attached hereto when issued) constitute the entire contract between the parties hereto * * * "

The seventh paragraph thereof is as follows:

"No agent can make, alter or discharge this Policy; nor can the Policy be varied or its conditions waived, altered or extended in any respect, except by the written agreement of the Company signed by its President, Vice-President, Secretary, Assistant Secretary or Treasurer."

The final words of said application are as follows:

"I hereby declare that the following settlement has been made and Binding Receipt of number corresponding to this application has been delivered to and accepted by me, subject to the above agreements.

Cash $10,816.15, Note for $_____ Due _____
Dated at Portland, Ore. this 7 day of Jan 1933."

The receipt above mentioned was not delivered to the applicant.

Plaintiff's amended and supplemental articles of incorporation dated October 12, 1931, disclose that its capital stock was of the par value of $100,000 divided into ten thousand shares each of the par or face value of ten dollars.

On November 16, 1931, Capitol Underwriters Corporation was subscriber to all of the corporate stock issued by plaintiff except six shares.

On said 16th day of November, 1931, management and agency contracts dated November 12, 1931, with said Capitol Underwriters Corporation were approved by resolution of plaintiff's stockholders.

The management contract provided that for and in consideration of twenty per cent of all first year's

premiums collected by plaintiff, the Capitol Underwriters Corporation would pay on behalf of plaintiff all costs of management, development and supervision including costs of agency, development, territorial development, medical fees, auditing costs, advertising costs, rent, all salaries, actuarial costs, and each and every item which shall be deemed necessary in the normal development of a life insurance company.

Said agency contract provided that plaintiff "has this day granted unto Capitol Underwriters Corporation * * * the exclusive right to act as its agent in the United States and elsewhere in the sale of all types of life insurance which the company is now empowered or may hereafter be empowered to issue."

Said agency contract has this further provision:

"The said company hereby promises and agrees to pay the said Agent a commission of seventy-five per cent (75%) upon the total first year premiums *paid* to said Company on all forms of insurance except upon single premium policies. An agreement as to the commission rate on single premium policies shall be later entered into by and between the Company and Agent."

From 1930 to 1932, defendant, Albert L. Bernert, loaned various sums to Capitol Underwriters Corporation.

On January 5, 1933, Capitol Underwriters Corporation wrote to the defendants herein as follows:

"Albert and Mary Bernert,
Willamette, Oregon.

Dear Mr. and Mrs. Bernert,-

Inasmuch as this Corporation owes you at this time, approximately $21,865.66 plus accrued interest, you agree to cancel approximately $10,816.50 of this obligation in consideration of full payment of the $15,000, Ten Year Endowment, Single Premium Policy, (this

rate is not exact but more or less according to the company's rates.)

You agree further to cancel $1,000.00 of these notes in consideration of a $1,000.00 in cash and you agree also to cancel the balance of these notes under the terms of a certain Syndicate Agreement, subscription to which you just made. It being definitely understood your subscription to the Syndicate agreement is subject to the terms and conditions above-numerated.''

When the letter above quoted was written Mr. W. E. Hibbard was president both of Capitol Underwriters Corporation and plaintiff corporation. He wrote said letter for Capitol Underwriters Corporation.

Compliance upon Mr. Bernert's part with the terms of said letter is the consideration for the issuance by plaintiff to him of the life insurance policy in suit.

Upon October 15, 1934, plaintiff addressed a written communication to defendants, the contents of which, omitting the formal parts, are as follows:

''This is to advise you that we have elected to and do hereby cancel and terminate your policy no. 2350, issued by this company to take effect as of March 25, 1933.

The policy is thus cancelled because of the conviction on the part of this company that the single premium called for by the policy, viz., $10,816.50, has not been paid, and that the acceptance of an assignment of your claim against Capitol Underwriters Corporation under all the circumstances was legally unjustifiable either as against this company itself or as against its other policy-holders, whether insured before or after the date of your policy.

We relinquish all rights against Capitol Underwriters Corporation which you may have attempted to give us in payment of the premium on this policy.''

In the briefs, counsel have referred to plaintiff as ''Union'' and to Capitol Underwriters Corporation as ''Capitol''. This was done for the sake of brevity.

Plaintiff urges three reasons in support of the decree of cancellation, namely:

(1) Policy No. 2350 was neither authorized nor delivered to defendants.

(2) The single premium of $10,816.50 was never paid either (a) directly to "Union" or (b) indirectly through its agent, "Capitol".

(3) Estoppel and waiver cannot go to the extent of ratifying a violation of the law to the detriment of other policyholders.

As to the matter of delivery of the policy to defendants, it is expressly alleged in paragraph IV of plaintiff's complaint that the policy was delivered to the defendant Albert L. Bernert. In paragraph VII of defendants' further and separate amended answer, it is alleged that plaintiff issued and delivered to the defendant, Albert L. Bernert, on or about March 25, 1933, the policy of insurance mentioned in plaintiff's complaint. In reference to paragraph IV of plaintiff's complaint defendants deny the same "except any facts therein alleged which are hereafter affirmatively set forth in defendants' further and separate answer." Delivery of said policy to defendant, Albert L. Bernert, therefore, is an admitted fact herein.

The ground taken for challenging the authority of plaintiff to issue said policy is that the agent's report on the back of the application, among other things, states:

"14. I have received from applicant and remit herewith $10,816.15 in cash and/or have taken the Applicant's note for $.......... due .......... which is enclosed."

And, as heretofore stated, there is a notation on the application of a receipt of cash in the sum of $10,816.15 by W. E. Hibbard; and inasmuch as the consideration

was as heretofore stated, namely, surrender and cancellation of notes owing to defendant, Albert L. Bernert, therefore, the statement in the application that cash was paid is untrue.

To the same point, it is also urged because the application which Bernert signed contained the provision: "That if said first premium be not fully paid at the time of making this application  *  *  *  such policy shall not take effect until it is delivered to me  *  *  * and the amount of the premium hereon has been paid to the Company or its authorized agent," therefore the issuance of said policy was unauthorized.

Plaintiff also refers to the provision of section 46-419, Oregon Code 1930; "No domestic insurance company shall transact any business other than that specified in its articles of incorporation"; and to the provision in Article III of section 2 of plaintiff's articles of incorporation, stating the object, purposes, business and pursuit, among others, to be as follows:

"To receive money on insurance contracts and pay money or other things of value to persons, policyholders or their beneficiaries, families or representatives, conditioned upon the continuance or cessation of human life."

It is argued by plaintiff that the method of payment relied upon by defendants violates the powers of the corporation.

It is also contended by plaintiff that the contract of insurance in suit is in direct violation of the following statutory provisions:

"No life insurance company doing business in this state, shall make or permit any distinction or discrimination in favor of individuals between insurants of the same class and equal expectation of life in the amount or payment of premiums or rates charged for policies

of insurance, or in dividends or other benefits payable thereon, or in any other of the terms and conditions of the contracts it makes; nor shall any such company or any agent thereof make any contract of insurance unless all agreements or understandings by way of inducement and all consideration for such contract and all terms, conditions and benefits thereof are plainly expressed in the policy issued thereon; nor shall any company or agent pay or allow, or offer to pay or allow as inducement to insurance, any rebate of premiums payable on the policy, or any special favor or advantage in the dividends or other benefits thereon, or any valuable consideration or inducement not specified in the policy contract of insurance;" Section 46-511, Oregon Code 1930.

One pivotal question here is what constitutes payment. Certainly the authority "to transact a life insurance business and all and every insurance pertaining to life of persons" which, in the first subdivision of article II of the articles of incorporation, is declared to be the object, purpose, business and pursuit of plaintiff, is not to be hampered by the necessity of requiring the actual delivery of coin or currency to the plaintiff by a prospective policyholder in order to render its policy valid. Business is not transacted that way. Checks, drafts, memoranda of credit, mutual accounts take the place and assume the functions of money. Comparatively few payments are made in cash. To hold it to be obligatory to pay in actual money in order to secure a valid policy of insurance would be to upset and overturn most of the policies issued.

Corpus Juris states the rule thus:

"It is sufficient to avoid a forfeiture that the agent of the company who is authorized to collect premiums advances the money for the insured or is charged with it by the company, insured becoming the personal debtor of the agent, or that the company agrees to look

solely to the broker for the premium." 32 C. J. Insurance, p. 1312, § 559 and cases there cited. See also *Fidelity Casualty Co. v. Willey*, 80 Fed. 497, 25 C. C. A. 593; *Mutual Life Insurance Company v. Logan*, 87 Fed. 637, 31 C. C. A. 172; *Miller v. Brooklyn Life Insurance Co.*, 12 Wall 285, 303, 20 L. Ed. 398; Vol. 7 Rose's Notes on United States Reports at p. 414.

■ The statute prohibiting distinctions or discriminations and inducements not stated in the policy and requiring a true statement of the premium paid or to be paid must not be construed to change the usual course of business, nor to limit the term payment to those transactions wherein the money itself physically changes by actual manual delivery from the hands of the payor to those of the payee.

Attempt has been made to characterize the acceptance by plaintiff of Bernert's claim against the Capitol Underwriters Corporation in the amount of the premium on the policy in suit as a mere bookkeeping entry. The same could be said of the receipt of a check passed to the credit of the one giving it and debited to the one receiving it. The record is clear that in March, 1933, plaintiff charged Capitol Underwriters Corporation with the amount of the premium on the policy in suit. It is equally clear that at that time the plaintiff accepted the transfer of Bernert's claim against the Capitol Underwriters Corporation in said amount. It is also established that, at that time, Bernert surrendered notes owned by him and executed by the Capitol Underwriters Corporation for money loaned to it by Bernert. Likewise, the record discloses that at that time, namely in March, 1933, the Capitol Underwriters Corporation was a going concern. Subsequent to March, 1933, that going concern received credits upon plaintiff's books in sums aggregating more than

$70,000. There is no allegation in plaintiff's complaint or proof in the record that when the plaintiff accepted Bernert's claim against the Capitol Underwriters Corporation as the consideration for issuing the policy in suit, said Capitol Underwriters Corporation was insolvent.

The only grounds for cancellation of said policy alleged in plaintiff's complaint are set forth in paragraphs IV and VI of said complaint, which are that said policy was issued without authority and delivered without consideration and "That plaintiff has never received payment of the single premium in the sum of Ten Thousand Eight Hundred Sixteen and 50/100 ($10,816.50) Dollars, or any part thereof or any sum of money or property and that there has been no consideration paid to the plaintiff by said defendants for said policy."

" 'Payment' is the discharge of an obligation by the delivery and acceptance of money or of something equivalent to money which is regarded as such at the time by the party to whom the payment is due. Said Mr. Chief Justice LORD in Bush v. Abraham, 25 Or. 336, 35 Pac. 1066:

'Payment, in a restricted sense, is a discharge in money of a sum due. As usually understood, it means the transfer of money from one person who is the payer to another who is the payee in satisfaction of a debt. In such sense it would not include an exchange or compromise or an accord and satisfaction, but would mean the full satisfaction of the debt in money. But in its general sense payment is the performance of an agreement or the fulfillment of a promise or obligation whether it consists in giving or doing. The discharge of a contract or obligation in money or its equivalent with the assent of the parties would constitute payment. It may be made in something else than money; in fact, anything that the creditor may accept as payment. It

is a mode of extinguishing obligations. To constitute payment, therefore, money or some other valuable thing must be delivered by the debtor to the creditor for the purpose of extinguishing the debt and the creditor receive it for the same purpose.' " *Cranston v. West Coast Life Ins. Co.*, 63 Or. 427, 437, 128 P. 427.

In the case at bar, it should be noted that plaintiff's letter to defendants notifying them of plaintiff's attempted election to cancel the policy, expressly refers to an acceptance of an assignment of defendants' claim against Capitol Underwriters Corporation.

■ We think that the record clearly shows that plaintiff assented to payment of said premium by Bernert in the manner alleged in paragraph VI of defendants' further and separate amended answer, namely, by the cancellation of $10,816.50 of the indebtedness due and owing to Bernert from said Capitol Underwriters Corporation and the adjustment of the accounts between plaintiff and said Capitol Underwriters Corporation with respect to the transaction so that plaintiff should receive the amount of such premium.

The recital in Bernert's application for insurance that said payment had been made, the charge on plaintiff's records against Capitol Underwriters Corporation of the amount of said premium, the procurement by plaintiff of reinsurance in part of the Bernert risk for a period of a year subsequent to the issuance of the policy in suit convince us that plaintiff assented to payment in that manner.

As shown by the minutes of the plaintiff's executive committee dated March 1, 1933, payment was made to plaintiff by Capitol Underwriters Corporation of the approximate amount of money which plaintiff was required to place on deposit with the state treasurer to

offset plaintiff's liability arising from the issuance of the policy in suit.

Other payments were subsequently made to plaintiff by Capitol Underwriters Corporation which, with the one just mentioned, aggregate a sum in excess of $70,000 upon the account between plaintiff and said Capitol Underwriters Corporation.

Differences arose between the two corporations and litigation ensued. During the year 1937, two actions at law and three suits in equity were instituted by Capitol Underwriters Corporation. Said litigation was settled by the payment to the receiver of Capitol Underwriters Corporation by plaintiff of the sum of $20,000.

In fact, a stipulation was made in the four cases first instituted by said Capitol Underwriters Corporation wherein it was agreed that in consideration of a full settlement and dismissal of said cases, plaintiff herein would pay $40,000. Thereafter, plaintiff attempted to revoke said stipulation. This led to the institution of the fifth case by Capitol Underwriters Corporation based upon said stipulation and plaintiff's breach thereof.

During the negotiations preceding the first settlement, the policy in suit and the premium thereon were discussed by plaintiff herein and said Capitol Underwriters Corporation, it being stated that the plaintiff herein had set aside a reserve to cover Mr. Bernert's claim.

This settlement, preceded by a discussion of defendants' claim and followed by the payment of $20,000 to Capitol Underwriters Corporation by plaintiff and the credits given the Capitol Underwriters Corporation by plaintiff, as heretofore stated, convince us that plaintiff received payment from Mr. Bernert of the premium on the policy in suit.

To support the proposition that an attempted ratification of the manner in which the premium on the Bernert policy was paid violates the law and hence is unavailable to defendants herein, plaintiff cites and quotes from section 46-506, Oregon Code 1930, as follows:

"* * * no policy of life insurance, * * * shall be issued or delivered in this state or be issued by a life insurance company organized under the laws of this state, unless the same shall contain in substance the following provisions:

(c) * * * A provision that the policy shall constitute the entire contract between the parties * * *"

The policy in suit contains the above quoted provision, and it is argued that the manner in which the premium was paid herein is at fatal variance with the provision in the policy relating to the amount and payment of the premiums which is as follows:

"The consideration for this insurance, is the application for this Policy which is made a part hereof, and the payment in advance of the Single Premium of Ten Thousand Eight Hundred Sixteen and 50/100 Dollars the receipt of which is hereby acknowledged."

■ The controlling doctrine of *Mercer v. Germania Insurance Co.,* 88 Or. 410, 171 P. 412, cited by plaintiff, is that estoppel of insurer to defend under clause of policy avoiding it if insured's interest were other than as therein stated, in order to be available to insured must be pleaded in the complaint. In the case at bar, estoppel and waiver are pleaded in defendants' answer, which is the first pleading available to them herein.

The question of estoppel is not involved in *Smith v. Germania Fire Insurance Company of N. Y.,* 102 Or. 569, 202 P. 1088, 19 A. L. R. 1444, also cited by plain-

tiff. There, it was held that where a mortgagee's rights in the policy are attested by the loss payable clause, "Loss if any, subject, however, to all the terms and conditions of this policy, payable to Albert N. Smith, mortgagee," a violation by the insured of the conditions of the policy forfeits the rights of the mortgagee.

*Gause v. Security Life Insurance Co. of America,* (Tex. Civ. App.) 207 S. W. 346, was a suit to collect a note given in payment of first year's premium on five life insurance policies. The insured sought to avoid liability because of alleged representations by the agent of the insurance company to the effect that the company would loan the insured $15,000 at five per cent interest. The agent had no authority to make any such representations. No demand for performance thereof by the insurer was made during the period of the time covered by the first premium. The question of waiver or estoppel on the insurer's part is not involved.

*Graham v. Mutual Life Insurance Co.,* 176 N. C. 313, 97 S. E. 6, also cited by plaintiff, is an action by a policyholder to recover upon the terms expressed upon a paper furnished by the agent of the insurance company. This paper contained six options with figures as to how they would "pan out". This paper was not referred to in the policy, was not attached to it; and there is no evidence that it was ever seen or ratified by any officer of the defendant. There again ratification is not an issue.

*Union State Bank of Shawnee, Okla. v. First National Bank of Huntsville, Ark.,* 122 Ark. 612, 184 S. W. 411, [opinion not officially reported] cited by plaintiff to the point that knowledge on the part of the president of an insurance company that misrepresentations had been made by the agent of said company is not imput-

able to the bank of which the insurance company's president is also president.

There it was shown that the president of the insurance company was in fact only nominally president of the bank; and was not acting for the bank in the transaction in suit but entirely for the insurance company. In the instant case, Mr. Hibbard was actively attending to the business of both corporations.

*Giddings v. Northwestern Mut. Life Insurance Co.,* 102 U. S. 108, 26 L. Ed. 92, cited by plaintiff, discloses an application made August 6, 1872, for a policy of insurance upon the life of Silas Giddings, Sr. The premium to be paid was $302.52. On August 24, 1872, the policy was sent to the company's agents. Not being called for, on October 2, 1872, the policy was returned to the company and thereupon cancelled. Giddings died on September 4, 1872. On November 12 or 13, 1872, his personal representative tendered to said agents of the company the first premium. Neither a tender of the premium or a demand for the policy was made by any one until the time before mentioned, and no notice was given by Giddings or any one in his behalf during his life that he intended to consummate the transaction by paying the premium and receiving the policy. Among the stipulations in the policy was one that the assurers should not be bound by the instrument until the premium was paid in the lifetime of the assured and the policy was countersigned by the authorized agent of the company. The court held that there was no performance by the applicant and hence no contract or obligation on the part of the company. In the case at bar, in payment of the premium, there was an assignment to plaintiff of a claim against the Capitol Underwriters Corporation by Bernert and an

acceptance of that assignment by the plaintiff, as well as a delivery to plaintiff of the policy; a reinsurance of a part of the risk by plaintiff; and an adjustment and settlement by plaintiff of the mutual accounts between plaintiff and said Capitol Underwriters Corporation of which the claim assigned by Bernert was a part.

*Montclair Building & Loan Association v. Miller*, 93 N. J. Eq. 653, 117 A. 140, cited by plaintiff, to the same point, is one wherein the court of errors and appeals entered an order of affirmance for the reasons stated in the oral opinion of the vice chancellor, who entered the decree in the court of chancery. There it was held that a building and loan association was not chargeable with knowledge on the part of two members of its board of directors concerning title to real property not disclosed by title search and not brought to the attention of the board of directors. The various entries upon the books of plaintiff in the instant case, the reinsurance in part of the risk in suit, the continuance of mutual debits and credits, and the fact that the Capitol Underwriters Corporation was the general agent of plaintiff and having the same officers as plaintiff plainly distinguish it from the New Jersey case.

*Hoffman v. John Hancock Mutual Life Insurance Co.*, 92 U. S. 161, 23 L. Ed. 539, cited by plaintiff, is one wherein upon application being made for insurance by one Hoffman, a subagent took a horse valued at $400 as part of the premium therefor. The general agent refused to ratify the subagent's action. No part of what was paid by Hoffman to the subagent ever came into the hands of the general agent or of the insurance company or inured in any wise to the benefit of either. The court refused to require the company to deliver the policy

to Hoffman's personal representative or to pay her the insurance money. In the case at bar, there was no subagent. The transaction was begun by the general agent, approved by the executive committee of plaintiff and consummated by the plaintiff. Admittedly the policy was delivered to Bernert and was in effect for more than a year. Plaintiff is not supported by its assertions that the agency contract of Capitol Underwriters Corporation was cancelled on January 26, 1933. The only record of cancellation of the agency contract is of October 30, 1934. It is not to be supposed that plaintiff would cancel a contract on October 30, 1934, that had already been cancelled on January 26, 1933.

*Hoyt v. Hampe,* 206 Iowa 206, 214 N. W. 718, 220 N. W. 45, is a case wherein the directors of an insurance company, which was functioning with difficulty, sold their stock therein, took pay for it from the funds of the company and retired from its management. Several months later, the company was placed in the hands of a receiver. The court held that the directors sustained a trust relationship to the creditors and decreed a recovery by the receiver for the benefit of the creditors of the funds so taken by the directors from the funds of the company. The case is very dissimilar to the instant case.

*Jenkins & Co. Bankers v. Standrod,* 46 Idaho 614, 269 P. 586, cited by plaintiff, is a case wherein the complaint alleges that defendants, being directors of a certain bank, induced plaintiff bank of which defendants were also directors, to purchase from the first mentioned bank notes known by said defendants to be worthless to the damage of plaintiff. The trial court sustained a demurrer to the complaint. The supreme court held that a cause of action was stated. We are

unable to concur with plaintiff herein that Bernert's claim against Capitol Underwriters Corporation, which Bernert assigned to plaintiff as the premium on his policy, was worthless or uncollectible. We think that the record discloses that it was paid to plaintiff. The corporate structure of both corporations was changed shortly after Bernert became a director so that executive committees were created which respectively managed and conducted the business of said corporations. Bernert never was a member of either of these executive committees. Bernert, therefore, had no voice in the acceptance by plaintiff of his claim against the Capitol Underwriters Corporation. These facts render the doctrine of *Jenkins & Co. Bankers v. Standrod*, supra, inapplicable to the case at bar.

■ The suggestion that estoppel and waiver cannot go to the extent of ratifying a violation of the law to the detriment of other policyholders, stockholders and creditors is, we think, inapplicable here. As stated, we hold that there was no violation of law in the manner of payment of the premium, and no creditor, policyholder or stockholder was prejudiced thereby.

Plaintiff argues that because no other single premium policy had been written by plaintiff when it issued the policy in suit, a discrimination is thereby shown in favor of Bernert and prejudicial to other policyholders. That doctrine would lead to the invalidation of the first policy issued of a given class, for when issued it would be different from any of the other existing policies. A mere statement of such a proposition is a sufficient refutation thereof.

It is also urged that Capitol Underwriters Corporation was not authorized to act as the agent of plaintiff in the sale of single premium policies, because the

agency contract contained the clause, "An agreement as to the commission rate on single premium policies shall be later entered into by and between the Company and Agent."

The facts attendant upon the contract of agency, the terms of the contract itself and the practical construction given it by the parties thereto, in our opinion, bring this contract of agency under the exception to the general rule that an agreement that the parties thereto will in the future make such contract as they may agree upon amounts to nothing. The reason for such an exception is that, at the making of a contract for a right, it may sometimes be impossible to determine details, or the changing situation of affairs may indicate that details also must be subject to modification; and, therefore, should not be definitely prescribed, and should be left to settlement by an agreement or decree at the time the right is insisted upon. In such cases, if the right is absolutely contracted for and the details are of a nature which courts may properly fix and settle, the courts should not hold the contract incomplete, but determine the right and also prescribe and settle the details: 6 R. C. L. Subject: Contracts, p. 618, § 39, citing *Slade v. Lexington*, 141 Ky. 214, 132 S. W. 404, 32 L. R. A. (N. S.) 201; 12 Am. Jur. Subject Contract, § 24, citing *Taylor v. Crowe*, 190 Ark. 71, 77 S. W. (2d) 54.

We think that from November 16, 1931, until the cancellation of said agency contract on October 30, 1934, Capitol Underwriters Corporation was the general agent of plaintiff.

We have not discussed the fact that Mr. Bernert procured a share of stock in plaintiff corporation; that in November, 1931, he was made a director of plaintiff, and that he continued as an officer and stock-

holder in plaintiff corporation until December 31, 1934, for the reason that there is neither allegation in plaintiff's complaint nor proof in the record that there was any collusion between Bernert and the other officers of plaintiff, or any action whatever on Bernert's part wrongfully tending to influence such other officers of plaintiff in the matter of accepting his application and issuing his policy. This phase of the record is presented by plaintiff to support its contention that Bernert had actual and constructive knowledge of his legal obligations, and, that the means he was using to effect this insurance was in violation of law, first, because it was beyond the scope of plaintiff's corporate powers, and second, contrary to the statute and the terms of the policy. As stated, upon this contention we are unable to agree with plaintiff.

For these reasons, the decree of the circuit court is reversed and this cause is remanded with instructions that a decree of dismissal be entered.

RAND, C. J., and ROSSMAN and BAILEY, JJ., concur.